## CROWELL & THURLOW S. S. CO. et al. v. TEXAS CO.

### THE STEPHEN R. JONES.

Circuit Court of Appeals, Fifth Circuit. July 6, 1928.

No. 5176.

1. Collision ⟲9—Local pilot custom on lower Mississippi river of long standing, having received judicial sanction, constitutes exception to pilot rules.

Local pilot custom on lower Mississippi river relative to ascending vessel coming up under points, while descending vessel runs the bends, having received judicial sanction and being of long standing, must be considered an exception to pilot rules.

2. Collision ⟲91—Power barge, failing to slacken speed or blow danger signal when not hearing proper passing signal from approaching steamer, held at fault in resulting collision.

Power barge, descending Mississippi river, failing to slacken speed or stop and back, when pilot observed head lights and side lights of approaching steamer, and not blowing danger signal when she heard no passing signal at proper time, as required by pilot rules, *held* at fault in resulting collision.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by the Texas Company against the Crowell & Thurlow Steamship Company, claimant and owner of the steamship Stephen R. Jones, and others, wherein respondents filed a cross-libel. Decree for libelant, and respondents appeal. Reversed and remanded, with direction.

Geo. H. Terriberry, Jos. M. Rault, and H. F. Stiles, Jr., all of New Orleans, La. (Terriberry, Young, Rault & Carroll, of New Orleans, La., on the brief), for appellants.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La. (John D., M. A., and Edwin H. Grace, all of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. On November 24, 1922, at about 8:45 p. m. the power barge Texaco 147, owned by appellee, collided with the steamship Stephen R. Jones, owned by appellant, in the Mississippi river, some 30 miles below New Orleans. Both vessels were damaged, and a libel and a cross-libel were filed.

The testimony exhibits the conflict usual in collision cases, but it is unnecessary to review it in its entirety. The Jones was ascending the river, coming up under Poverty Point, which is on the east bank, and the Texaco was descending, running close to the west bank. Under the pilot rules the Texaco had the right of way, and it was the duty of the Jones to initiate the passing signals, which the Texaco could agree to, or change, after stopping and blowing the danger signal of four or more short blasts. The collision occurred close to the west bank, in a comparatively straight reach of the river, just around and above Turtle Point, which is a projection on the west bank.

The District Court found that the Jones, after rounding Poverty Point, went obliquely across the bend, crossing the bow of the Texaco; that the Jones blew two blasts and starboarded her helm, when within a distance of a half a mile or less and the danger of collision was imminent; that she was going full speed ahead, within a ship's width of the bank, and blew two more blasts and put her helm hard astarboard, going into the bank, when a ship's length away from the Texaco; and that not until just before the collision did she put her engines full speed astern. On these facts the District Court reached the conclusion that the Jones was solely at fault and had violated rule 5 in crossing the river with a descending steamer so near that a collision was possible, and also had violated rules 1, 2, 9, 10, and 21 in failing to give the passing signal and have an answer that was understood before arriving at a distance of half a mile from the descending steamer, and in altering her course and proceeding before the privileged descending vessel answered; in failing to blow the danger signal and stopping and reversing; and in failing to observe the starboard hand rule of the road to keep to the right.

We agree with the District Court in hold-

ing the Jones responsible for the collision, but we have reached the further conclusion that the Texaco was guilty of faults that also contributed to it.

[1] The local pilot custom on the lower Mississippi river is for the ascending vessel to come up under the points, in order to get the benefit of slack water, while the descending vessel runs the bends, keeping in or near the middle of the river, in the thread of the stream, to get the benefit of the current. This custom is of long standing, has received judicial sanction, and must be considered an exception to the pilot rules. The Albert Dumois, 177 U. S. 240, 20 S. Ct. 595, 44 L. Ed. 751; The Esparta (C. C. A.) 160 F. 289.

Following the custom, except for the close proximity of the Texaco the Jones could have properly crossed the river where she did, in order to come up under Turtle Point, which sufficiently projected to deflect the current to some extent. There was no necessity for the Texaco to be close in to the west bank. Had she been out in the center of the stream, where the Jones could have expected to find her, it is probable that the collision would not have occurred; but we put this aside as unimportant.

The testimony of Cox, a licensed river pilot, who was in charge of the navigation of the Texaco at the time of the collision, is somewhat confused; but we conclude from it that the Texaco was close to the west bank going down the river when he saw the head and range lights of the Jones, and her red and green side lights at the same time. This should have told him she was dead ahead, or nearly so. He did not hear any passing signal from the Jones until the collision was imminent. He did not at any time slacken his speed, or stop and back, and did not blow the danger signal.

The Jones was on the west bank, where she thought she had the right to be, and the Texaco had the whole width of the river to pass to the left, when the Jones blew a signal of two blasts, indicating that course. The Jones had no means of knowing that her signal had not been heard, unless the Texaco so indicated by blowing the danger signal. Had that been done, the Jones might have stopped and reversed her engines in time.

[2] The Texaco was at fault in not slackening her speed, or stopping and backing, when her pilot observed the head light and both side lights of the Jones, and in not blowing the danger signal, when she heard no passing signal from the Jones at the

27 F.(2d)—14

proper time, as required by rule 2. It is evident that both vessels were at fault in not observing the rules.

Reversed and remanded, with instructions to divide the damages equally.