BOOTH FISHERIES CO. (OHIO) et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 5683.

Circuit Court of Appeals, Seventh Circuit.
June 4, 1936.

John E. Hughes, of Chicago, Ill., for petitioners.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., and Morton K. Rothschild, of Washington, D. C., for respondent.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Petitioners and various other affiliated corporations filed through the parent corporation a consolidated tax return for the fiscal and taxable year ending April 30, 1930. The Commissioner determined a deficiency of $1,958.47, due to the disallowance by the Commissioner of certain losses of the Canadian subsidiaries of petitioners. The parent and some of the affiliated companies later became involved in bankruptcy and receivership proceedings, but those appealing are not so involved.

In their petition to the Board of Tax Appeals, petitioners alleged two errors of the Commissioner:

First. That the Commissioner erred in allowing insufficient rates of depreciation on certain properties of the taxpayers for the taxable year in question.

Second. That the Commissioner erred in failing to allow petitioners certain losses sustained by their Canadian subsidiaries.

On the first point the Board found in favor of the taxpayers and ordered that they be allowed increased depreciation at certain rates then determined. Responsive to the Board's decision the respondent redetermined the taxpayers' liability on account of this error and filed with the Board a statement showing an overassessment of $6,164.43, and that timely claim for such refund had been made. The Board failed to enter an order of overpayment as thus determined apparently for the reason that the parent corporation, the Booth Fisheries Company of Del-

aware, was not a petitioner before the Board.

No question is raised concerning the redetermination in regard to the overassessment except that petitioners assert that the Board should have directed return thereof to the Booth Fisheries Company of Ohio in pursuance of designation of the Ohio corporation as agent. This designation was executed by the parent corporation by its trustee in bankruptcy and by all other subsidiaries[1]

Paragraph (a) of Article 16, Regulations 75 of the Treasury Department provides that the parent corporation shall, for all purposes in respect of the tax for the taxable year for which a consolidated return is made, act for the subsidiaries including claims for refunds. It recites that "refunds will be made directly to and in the name of the parent and will discharge any liability of the Government in respect thereof to any such corporation.   *   *   *"

Paragraph (c) of this same Article is as follows:

"In the event that the parent corporation is contemplating dissolution, or is about to be dissolved, or if for any other reason its existence is about to terminate, it shall be its duty forthwith to notify the Commissioner of such fact and to designate another agent to act as agent in its place, to the same extent and subject to the same conditions and limitations as are applicable to the parent corporation."

It was pursuant to these provisions that the parent company filed the original claims for refund with the Commissioner on behalf of all the subsidiaries, and later upon the contemplated termination of the existence of the parent, the designation of the Ohio subsidiary as agent.

Respondent in his brief says that:

"Booth Fisheries Company (Delaware), the parent corporation, at the time of the Commissioner's deficiency letter, was in receivership and could not file a petition with the Board of Tax Appeals because of the receivership proceedings. The petitioners,

under Article 16 (c) of Regulations 75. which had been duly complied with, therefore filed the petitions in the instant case, which not only raised the question of the Commissioner's disallowance of alleged losses sustained in the taxable year by the Canadian subsidiaries, but another issue from the decision of which by the Board it appears that there had been an overpayment of taxes for the taxable year by the affiliated group.

"The parent company made the overpayment of tax determined by the Board, and, prior to the institution of these proceedings, filed a claim for refund of the taxes overpaid as parent of the affiliated group."

Apparently, all formalities of the regulations have been complied with, the overpayment has been established before the Board and redetermined by respondent. We think it highly equitable and entirely consonant with the above-quoted regulation, and in the interest of a speedy termination of the entire matter that the overpayment in this respect be returned to the lawfully authorized agent of the parent corporation without further litigation.

On the second claim of petitioners it appears that in the consolidated return were included certain Canadian subsidiaries under the provisions of section 141 of the Revenue Act of 1928, 45 Stat. 791, 831, 832, 26 U.S.C.A. § 141 and note.

Subdivision (h) of this section provides that:

"In the case of a domestic corporation owning or controlling, directly or indirectly, 100 per centum of the capital stock (exclusive of directors' qualifying shares) of a corporation organized under the laws of a contiguous foreign country and maintained solely for the purpose of complying with the laws of such country as to title and operation of property, such foreign corporation may, at the option of the domestic corporation, be treated for the purpose of this title [chapter] as a domestic corporation."

---

[1] Petitioner's Exhibit 1-AA

"Under the provisions of Article 16, Paragraph (c), Regulations 75, governing consolidated returns made under the Revenue Act of 1928, the Booth Fisheries Company, the parent company in said consolidation, hereby notifies the Commissioner of Internal Revenue that the termination of its existence is contemplated and the Trustee in Bankruptcy of said parent company and the undersigned companies included in said consolidated return hereby designate the Booth Fisheries Company, a corporation of Ohio, as their agent under the provisions of said Regulations, to receive from the Commissioner of Internal Revenue the tax refund due to the parent company."

In the prosecution of their claim before the Board of Tax Appeals, petitioners claimed the right to deduct a loss of $16,926.79, suffered by their Canadian subsidiaries which they asserted "were owned and maintained for the purpose of complying with the laws of a contiguous foreign country as to title and operation of property," claiming to fall within the provisions of subdivision (h) aforesaid. To substantiate this claim before the Board, petitioners offered in evidence the Companies' Act of Canada of 1927, c. 27, vol. 1, par. 19 [2], and also offered as a witness the general manager of petitioners who testified: "I know the purpose for which this corporation was organized in Canada. It was to conform to Canadian requirements to make it possible to operate there." This was all that was offered on this question. The Board in its opinion, after reciting the evidence as above quoted, said, "The evidence of record is insufficient to establish the petitioners' claim. The record does not establish that any foreign subsidiary of the parent company operated at a loss. The contentions of the petitioners upon this point are not sustained."

Petitioners assert that the Board failed to pass on the question of whether they came within the provisions of subdivision (h), aforesaid, and, if so, entitled to deduct the losses of their Canadian subsidiaries, but rested their decision on the failure of petitioners to show that their Canadian subsidiaries had suffered any loss, a question they assert was not at issue before the

Board and which had been conceded by respondent.

We are inclined to agree with petitioners that the effect of the conduct of respondent, coupled with the report of his agent, and other documentary proof in the record, was a concession of the asserted loss of the Canadian Companies, and that it would be manifestly unfair to the taxpayers, if they be otherwise entitled to credit for such loss, to deny their claim on the basis of their failure to prove a loss before the Board when no active controversy had arisen about the actual loss, but only with the right to claim such loss as a deduction. See Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, and cases there cited. To invoke such asserted failure of the taxpayers when lulled into believing that the Commissioner was conceding their claimed loss would involve a technicality which we cannot approve. Taxpayers dealing in good faith with their government should likewise be accorded the utmost of frankness and good faith.

However, we accept respondent's interpretation that the Board's ruling is broad enough to deny petitioners' claim that the Canadian subsidiaries had been brought within the provisions of subdivision (h), supra. While it is true that the Board has made no specific finding of fact in respect to the Canadian subsidiaries, except as the language of the Board hereinbefore quoted may be assumed to be a finding that petitioners failed to establish the facts necessary to bring them under the appropriate

[2] Companies' Act of Canada of 1927, c. 27, vol. 1, par. 19:

"Any company incorporated under any general or special Act of any. of the provinces of Canada and any company duly incorporated under the laws of the United Kingdom or of any foreign country for any of the purposes or objects for which letters patent may be issued under this Part, and being at the time of the application a subsisting and valid corporation, may apply for letters patent under this Part, and the Secretary of the State, upon receiving satisfactory evidence that the act of incorporation or charter of the company so applying is valid and subsisting and that no public or private interest will be prejudiced, may issue letters patent, incorporating the shareholders of the company so applying as a company under this Part, limiting if necessary, the powers of the said company to such purposes or objects as might have been granted had the shareholders applied in the first instance to the Secretary of State for letters patent under this part, and thereupon all rights, property, and obligations of the former company shall be and become transferred to the new company, and all proceedings may be continued or commenced by or against the new company, that might have been continued or commenced by or against the old company.

"2. It shall not be necessary in any such letters patent to set out the names of the shareholders.

"3. After the issue of such letters patent the company shall be governed in all respects by the provisions of this Part, except that the liability of the shareholders to creditors of the old company shall remain as at the time of the issue of the letters patent (R.S. c. 79, S17)."

statute, yet there is no dispute of the asserted facts. Fully recognizing that we are without authority to find the facts where a disputed fact question has been presented to the Board and it has failed to find the facts (Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343), yet we believe on the record before us that this has become a question of law on the unchallenged, though meager, facts. In the face of respondent's concession that the Board has passed on this question, we, therefore, accept as our duty the determination of whether on the showing made petitioners brought themselves within the terms of the above-quoted statute.

Coupled with the sworn testimony of petitioners' manager that the Canadian subsidiaries were organized for the purpose of complying with the Canadian law and to make it possible to operate there, petitioners offered in evidence the "Companies Act" of Canada.

After asserting that the Board found this evidence not sufficient to establish that the Canadian subsidiaries were of the type contemplated by section 141 (h), supra, respondent contents himself by way of argument with the single assertion that the Canadian Act is wholly permissive in character and that it does not appear therefrom that compliance therewith is necessary by an American corporation as to title and operation of Canadian property.

As we read the Canadian Act, it provides that any company, incorporated under the laws of a foreign country (the United States), may apply for letters under that act and the Secretary of State may, under certain conditions, issue such letters incorporating the shareholders of the company so applying, as a corporation under that act, and thereupon all the rights, property, and obligations of the former company shall be transferred to the new company and all proceedings may be continued by or against the new company that might have been had by or against the old company. While the act is not penal in character and not expressly prohibitory, yet by inference at least it would seem to raise a barrier to foreign corporations not complying therewith.

Although we will not judicially notice the laws of the Canadian government, in an effort to learn if some expressly prohibitory statute exists, neither will we assume, in the present state of the record, that an artificial entity of our country possesses any rights or privileges in a foreign country without compliance with the regulatory laws of that country. The parent corporation here involved was a Delaware corporation, a creature of the statutory law of that state, and we will not assume in the absence of any showing to controvert that made by petitioners that it had any right or authority to do business or to operate its property in Canada without compliance with Canadian law. It is a conceded fact that the Canadian subsidiaries were incorporated under the laws of Canada and it appears from the act itself that the shareholders of the Canadian corporation must be the shareholders of the parent corporation, thus meeting the requirement of 100 per centum control by the parent corporation. The mere fact that the Canadian subsidiaries were incorporated under the provisions of this act without bringing any new capital or any new shareholders into the concerns is of itself persuasive that they were mere instrumentalities of the parent corporation. This situation is illustrative of the purpose Congress had in mind in extending to affiliated groups the privilege of a consolidated return. Indeed, respondent's agent in his report, said:

"Income has not been reported separately for the parent company and the various subsidiaries. The subsidiaries and branches are operated as an integral part of the parent corporation. The bureau has accepted the basis upon which this corporation has filed its return for prior years in which no segregation of income has been made. * * *"

The provisions of the tendered Canadian statute, the oral testimony of petitioners' manager which stands uncontradicted will, we think, together with all the facts and circumstances appearing in the record, in the absence of any showing to the contrary, be sufficient to bring the Canadian subsidiaries within the terms of section 141 (h), supra. We, therefore, conclude on this point that the taxpayers should have been given credit for the losses sustained by the Canadian subsidiaries.

The order of the Board of Tax Appeals is reversed and the cause is remanded with directions to allow petitioners credit for the losses sustained by their Canadian subsidiaries and to order return to the Booth Fisheries Company of Ohio, as agent, such overassessment as may appear to be due on account of the taxes here involved.

Reversed and remanded.