**BARROIS BROS., INC.**

v.

**LAKE TANKERS CORPORATION and THE M/V RAPIDS CITIES,**
Her Engines, Etc.

**No. 3501.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 30, 1960.

Cornelius Van Dalen, Christopher Tompkins, of Deutsch, Kerrigan & Stiles, New Orleans, La., for libelant.

Alfred M. Farrell, Jr., Terriberry, Rault, Carroll, Martinez & Yancey, New Orleans, La., for respondent.

CHRISTENBERRY, Chief Judge.

The foregoing matter having been tried to the Court without a jury, the Court having heard evidence and the arguments of proctors, and having taken time to consider the matters, hereby makes the following findings of fact and conclusions of law:

Findings of Fact

1. At all material times libelant was the owner and operator of the Lugger Young Thelma which was sunk as a result of collision with barges in tow of the M/V Rapids Cities in the Southwest Pass of the Mississippi River on February 1, 1957.

2. At all material times respondent was the owner and operator of the 1800 horse-power diesel tugboat Rapids Cities and the steel tank barges LTC–53 and LTC–55.

3. The Young Thelma was a single screw, wood-hull lugger, 43 feet in length, 12 feet in beam with a draft of about 4 feet. She was powered by a single 165-hp diesel engine, pilot-house controlled.

4. About 7:30 p. m. on February 1, 1957, the Young Thelma, without tow, departed Well No. 17 in Joseph Bayou (an adjunct of the Southwest Pass of the Mississippi River approximately 4 miles below the Head of the Passes) bound for Venice, Louisiana. Her master, Oneil Pitre, was at the wheel and was the sole crew member. One Hargrave, an employee of a company not a party to this litigation, was also aboard,

and had assisted Pitre in mooring a barge in Joseph Bayou.

5. Shortly after getting underway, the Young Thelma entered Southwest Pass and proceeded upstream on the left ascending (west) bank. She was making good a speed of about 3 miles-per-hour over the ground against a strong 8 to 9 mile current. The weather at this time was clear, and visibility was approximately one and one-half miles.

6. After taking aboard a passenger from a disabled craft on the east bank, the Young Thelma, following the "point-bend" custom of the Mississippi River, crossed the stream again and resumed her upstream course about 200 feet off the west bank of the Southwest Pass (approximately 1500 to 1800 feet wide in this area) so as to navigate beneath the point at the juncture of Southwest Pass and the Mississippi River.

7. The Young Thelma maintained her course and speed for some 25 minutes when heavy low fog was suddenly encountered. Her master, Captain Pitre, immediately slowed the Young Thelma's engine. Seconds later a "dark shape", which proved to be the hull of the tank barge LTC–53 in tow of the Tug Rapids Cities, loomed out of the fog nearly dead ahead. Pitre immediately put the Young Thelma's engine full astern, but it was too late to avoid collision.

8. The oncoming barge ran over the Young Thelma; she made water and sank rapidly. Captain Pitre and Hargrave jumped overboard and the other passenger (whose identity was not ascertained) climbed aboard the deck of the colliding barge. Hargrave was picked up by the pilot of the Crewboat Candor which arrived on the scene several minutes later and Pitre was rescued by the crew of the Rapids Cities.

9. When the pilot of the Candor, Benjamin Dew, came on the scene following collision, he found the Rapids Cities in the middle of the river with the head of her tow toward the west bank. He observed no running lights on the Rapids Cities nor did he hear any whistle signals

in the general area from the moment he located the Rapids Cities on his radar some fifteen minutes earlier until the time he arrived on the scene of collision.

10. Prior to these events, the Rapids Cities had departed Norco, Louisiana, at 8:00 a. m. on February 1, 1957, bound downstream in the Mississippi River pushing the two light barges LTC–53 and LTC–55 abreast. Each barge is 240 feet in length, 50 feet in beam and 11½ feet in depth.

11. The Rapids Cities entered the Southwest Pass at a speed of about 12 miles-per-hour, and, upon encountering a "haze" on the water, her speed was reduced to about 7 miles-per-hour over the ground.

12. Her radar was in operation and she had the Young Thelma in view on its scope, but there was no lookout stationed on the head of her tow.

13. In addition to the radar scope, the pilot of the Rapids Cities had been watching the white range light of the Young Thelma from the time it was first observed one-half mile downstream, to the time of collision.

14. The Rapids Cities' speed was not reduced at any time after entering Southwest Pass prior to the collision, and she sounded no fog signals.

15. Collision occurred about 200 feet off the west bank of Southwest Pass less than a mile below the Head of the Passes.

### Conclusions of Law

1. This court has jurisdiction of the action, and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333.

2. The geographical area involved is governed by the Inland Rules of the Road, Sec. 1 (33 U.S.C.A. § 151 et seq.).

3. The collision in suit was caused proximately and solely by the negligence of the Rapids Cities in the following particulars:

a—In proceeding at an excessive rate of speed in fog. Article 16 of the Inland Rules (33 U.S.C.A. § 192); The Umbria,

1897, 166 U.S. 404, 417, 17 S.Ct. 610, 41 L.Ed. 1053; The Eureka, 9 Cir., 84 F.2d 49, 1936 A.M.C. 1179, 1180; The Chicago, 9 Cir., 1937 A.M.C. 1427, 1433, 94 F.2d 754, 757; The Manchioneal, 2 Cir., 1917, 243 F. 801, 805; The H. F. Dimock, 1 Cir., 1896, 77 F. 226, 229–230. The Rapids Cities' speed was particularly immoderate in view of the fact that she had not only herself to stop but also two large tank barges, with an eight mile-per-hour current underfoot. If she could not proceed at a slower speed in the fog because of the current, then she should not have been underway in the first place. The Lillian Anne, 2 Cir., 1934 A.M.C. 569, certiorari denied 1934, 293 U.S. 575, 55 S.Ct. 86, 79 L.Ed. 673; The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 134, 22 L.Ed. 148; The H. F. Dimock, 1 Cir., 1896, 77 F. 226; Avondale Marine Ways, Inc., et al. v. Tug Crescent Cities, D.C.E.D.La., 184 F.Supp. 773, 1960 A.M. C. 1451.

b—In failing to keep a proper lookout. Article 29 of the Inland Rules (33 U.S.C. A. § 221); Gulf States Marine & Mining Co. v. Arthur Smith Corp., D.C.E.D. La., 156 F.Supp. 306, 1958 A.M.C. 131; C. J. Dick Towing Co. v. The Leo, D.C. S.D.Tex., 98 F.Supp. 455, 1951 A.M.C. 1539; Pure Oil Co. v. Union Barge Line Corp., D.C.W.D.Ky., 124 F.Supp. 121, 1955 A.M.C. 1116; Eymard v. Tug Bonnie Ruth, D.C.E.D.La., 120 F.Supp. 67, 1954 A.M.C. 1186; Gulf Oil Corp. v. Socony No. 16, 2 Cir., 162 F.2d 869, 870, 1947 A.M.C. 1031; The Sagamore, 1 Cir., 1917, 247 F. 743; Wood v. United States, D.C.S.D.N.Y.1954, 125 F.Supp. 42, 51, 52. The Rapids Cities was pushing ahead of her in fog two light barges, each some 240 feet in length. If a lookout had been stationed on the bow of the Rapids Cities' lead barge, he may well have seen the hull of the Young Thelma in time to direct his pilot accordingly. The pilot himself could not, and did not, maintain a proper lookout. He was attempting to watch his radar, the white light ahead, his course and speed and conditions of visibility all at the same time. Avondale Marine Ways, Inc., et al. v. Tug Crescent Cities, D.C.E.D.La., 184 F.Supp. 773, 1960 A.M.C. 1451.

c—In her blind reliance on radar, and in failing properly to interpret the information provided therefrom. Wood v. United States, D.C.S.D.N.Y., 125 F.Supp. 42, 1955 A.M.C. 142, 143; The Triton-Barenof, Sup.Ct. of Canada, 1956 A.M.C. 967; Polarus S. S. Co. v. T/S Sandefjord, et al., 2 Cir., 236 F.2d 270, 1956 A.M.C. 1779, certiorari denied 1957, Virika Rederi A/S v. Polarus S. S. Co., D.C.S.D.N. Y., 352 U.S. 982, 77 S.Ct. 383, 1 L.Ed.2d 365. Proper use of the radar would have indicated to the Rapids Cities' pilot the relative course and speed of the Young Thelma so as to enable him to correct the collision course. That the Rapids Cities placed undue reliance on her radar is clearly shown by her continuing ahead at an immoderate speed in thick fog. Avondale Marine Ways, Inc., et al. v. Tug Crescent Cities, D.C. E.D.La., 184 F.Supp. 773, 1960 A.M.C. 1451.

d—In failing to sound fog signals. Article 15(e) Inland Rules, 33 U.S.C.A. § 191. There is no support for the contention that the Rapids Cities sounded proper fog signals, or any signals at all. Captain Pitre and two impartial witnesses heard none. Respondent knew, or should have known, that there would be a dispute regarding the sounding of such signals. At least one witness aboard the Rapids Cities, among a crew of nine, could have been produced to corroborate Scurlock's testimony. Failure to produce such witness raises an inference against respondent that the Rapids Cities did not in fact sound fog signals. The New York, 1899, 175 U.S. 187, 204–205, 20 S. Ct. 67, 44 L.Ed. 126; Coyle Lines, Inc. v. United States, 5 Cir., 195 F.2d 737, 1952 A.M.C. 715; United Distillers of America v. The Ionian Pioneer, D.C.E.D.La., 130 F.Supp. 647, 1955 A.M.C. 1338, affirmed 5 Cir., 236 F. 78.

e—In navigating on the wrong side of the channel contrary to custom. Bisso Towboat Co. v. United States, 5 Cir., 6 F.2d 132, 1925 A.M.C. 951; The Norne, 5 Cir., 59 F.2d 145, 1932 A.M.C. 1598;

The Stephen R. Jones, 5 Cir., 27 F.2d 208, 1928 A.M.C. 1387; Rosebud R. & Y. and Tow, D.C.E.D.La., 112 F.Supp. 43, 1953 A.M.C. 824, 826; McElroy-Walker, D.C.E.D.La., 127 F.Supp. 867, 1955 A.M. C. 413, 418. The testimony of Pitre and Hargrave overcomes the unlikely story of the Rapids Cities' master, Captain Scurlock, that prior to collision the Rapids Cities was following the bend on her left (east) bank in compliance with the "point-bend" custom. Scurlock's version of the casualty must be discredited because of its irreconcilable conflict with the physical facts of the casualty.

4. The Young Thelma is free from contributing fault. The weight of evidence shows that the Young Thelma was proceeding upstream about 200 feet from the west bank of the Southwest Pass at a speed of about 3 miles-per-hour over the ground. Suddenly, and with practically no warning, the Young Thelma ran into a heavy fog patch. Her master immediately slowed the engines, but before he could evaluate the conditions of visibility, or sound fog signals, the oncoming Rapids Cities tow loomed up nearly dead ahead. When this ominous shape appeared from the fog, the Young Thelma's master tried to take evasive action. In extremis, his actions should not be condemned. The Oregon, 1895, 158 U.S. 186, 204, 15 S.Ct. 804, 39 L.Ed. 943; The Genesee Chief, 1852, 12 How. 443, 53 U.S. 443, 461, 13 L.Ed. 1059; The Stifinder, 2 Cir., 1921, 275 F. 271, 276. It is doubtful that there was any fault on the part of the Young Thelma but if there was, any such fault was but minor fault compared to the glaring faults of the Rapids Cities. The Great Republic, 1874, 23 Wall. 20, 90 U.S. 20, 35, 23 L.Ed. 55; The Lord O'Neill, 4 Cir., 1895, 66 F. 77, 79; The Queenston Heights, 5 Cir., 220 F.2d 120, 122, 1955 A.M.C. 797; Jack Neilson, Inc. v. Pure Oil Company, 5 Cir., 233 F.2d 790; Avondale Marine Ways, Inc., et al. v. Tug Crescent Cities, D.C.E.D.La., 184 F.Supp. 773, 1960 A.M.C. 1451.

5. Libelant is entitled to full recovery for the loss of the Young Thelma.