**SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Plaintiff,**

v.

**JACK NEILSON, INC., in personam and the TUG PEGGY, her engines, tackle, apparel, furniture, etc., in rem, Defendant.**

**Civ. A. No. 66-691.**

United States District Court
E.D. Louisiana, New Orleans Division.

May, 24, 1968.

---

James L. Schupp, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for plaintiff.

William L. Von Hoene, Morgan, Von Hoene & Becker, New Orleans, La., for defendant.

CASSIBRY, District Judge:

This is a suit by the South Carolina State Highway Department to recover damages from the defendant for allegedly striking plaintiff's bridge fender system with the Tug PEGGY on June 13, 1963 at the Byrnes Crossing Bridge over Skull Creek in Jasper, South Carolina. Defendant denied liability and further contended that the suit which was filed on November 17, 1966 was time barred. The parties are seeking an interlocutory decree on the question of liability only at this time.

The Court concludes that the claim is not time barred and that the plaintiff proved by a preponderance of the evidence that the defendant's Tug PEGGY did damage plaintiff's bridge fender system as alleged.

The Byrnes Crossing Bridge is a swing bridge, owned by the State of South Carolina, which crosses Skull Creek in Jasper County, South Carolina. It has a horizontal clearance of 97 feet through which vessels may pass. On both sides of the bridge opening there is a fender system consisting of clusters of pilings.

Only two eyewitnesses testified in the case. The plaintiff called A. M. Hudson, who was on duty as bridge operator on the Byrnes Crossing Bridge on June 13, 1963, the date of the alleged accident. The defendant's witness, Neal C. Hall, was deposed. He was the mate of the PEGGY at the time of the alleged accident. The testimony of Hudson was consistent and convincing and was to the effect that he observed the southbound Tug PEGGY with two barges being towed astern approaching the bridge on which he was standing watch. He said that at the time the flotilla was riding a strong ebbtide and her navigator appeared to be having difficulty controlling the tow. Hudson opened the bridge well before the tug arrived and then went down from the control room to the span itself so that he could be in a better position to see the passing of the tow. He testified that as the flotilla negotiated the bridge, the two barges in tow of the PEGGY struck and damaged the fender system. He said that he heard the sound of the fender piles cracking and saw planking drifting behind the barges as they passed. He called to the Captain of the PEGGY to stop and also signalled the PEGGY with his bridge horn, but the PEGGY refused to stop. He noted the name "PEGGY" on the tug, put the name in his daily log, made a full report, and promptly sent his report in to the State Highway Department.

■ The mate of the PEGGY, Hall, does not have any independent recollection of an accident at all. He admits that he was the mate on board the PEGGY and that the PEGGY did in fact pass through the Byrnes Crossing Bridge on June 13, 1963, but denies that the tug or the tow struck the bridge fender system. Generally, Hall testified that his tug and tow could not have struck the fender system because if it had the tow would have broken loose from the tug and he would have remembered if such a thing had happened. He went on to say that such a long time had elapsed from the time of the accident and the time he was being called upon to testify that it was very difficult for him to remember anything about the trip. While Hall's testimony was taken by deposition, the Court is not impressed with his explanation, first of how his tug could not have struck the fender system, and second, how the time lapse between the accident and the time of his testifying made it impossible for him to remember anything. In any event, the Court believes the testimony of Hudson and feels that the Tug PEGGY did in fact strike the fender system and did the damages alleged.

■ Since there was a lapse of several years between the time of the accident and the filing of the suit, defendant first plead laches as a defense to the suit. The defense of laches in an admiralty suit can be sustained only if the delay in instituting suit is inexcusable and prejudice resulted to the defendant from such delay. Point Landing, Inc. v. Alabama Dry Dock & Shipping Co., 261 F.2d 861 (5 Cir. 1958); Pure Oil Company v. Snipes, 293 F.2d 60 (5 Cir. 1961); Vega v. The MALULA, 291 F.2d 415 (5 Cir. 1961); Crabtree v. The S/S JULIA, 290 F.2d 478 (5 Cir. 1961). Since the doctrine of laches specifies no particular time period, we look to the statute of reference to place the burden of proving inexcusable delay and prejudice. The Key City, 81 U.S. 653, 20 L.Ed. 896. Defendant contends that the statute of reference is the Louisiana one-year prescription statute. Art. 3536, Louisiana Civil Code. The plaintiff contends that the laws of the State of South Carolina where the collision occurred are controlling. Those laws provide a six-year statute of limitations on suits of this kind. Code of Laws, State of South Carolina, 1962, § 10–143.

■ In a case somewhat similar to the instant case, Judge Skelly Wright held that the laws of the state in which the accident occurred would be applied rather than the state of filing the suit. Pure Oil Co. v. The F. B. Walker, 127 F. Supp. 867 (E.D.La.1955). There does not seem to be any authority to the contrary. Since the statute of reference provides a six-year time within which to file suits of this kind, the burden shifts

to the defendant to prove that his case was prejudiced by the lapse of time and that the plaintiff was guilty of inexcusable delay in the filing of his suit. The defendant did not meet this burden. Defendant, Jack Neilson, Inc., was placed on notice of the casualty shortly after the accident and invited to survey the damages. Thereafter, the plaintiff and defendant exchanged correspondence regarding the casualty. When it appeared that the claim could not be disposed of amicably, the plaintiff referred the matter to counsel in South Carolina where efforts were made to obtain jurisdiction over defendant or its vessel. When these efforts failed, the matter was referred to counsel in New Orleans where the principal office of the defendant is located. Suit was commenced in this Court on November 15, 1966. In view of the South Carolina six-year statute of limitations, the Court finds that the plaintiff was not guilty of inexcusable delay in filing the suit. As to prejudice, the defendant claims that the witnesses he found could not remember anything about the accident because of the lapse of time; that the log of the PEGGY and other records which may have been of some assistance to him were lost because title to the PEGGY was transferred many years before. But since the defendant was placed on notice, and kept on notice that he would be called upon to defend this suit, it was incumbent upon him to preserve the records with some effort on his part. He was further not prejudiced by the lapse of time because he was given an opportunity to make a survey of the damages, which he failed to do. He could have preserved the testimony of his Captain and Mate, or taken statements from them and properly prepared for the suit which he was advised was bound to come. Under those circumstances, the Court cannot conclude that the defendant met his burden of proving that he had been prejudiced by the delay in bringing the suit.

■■ Now as to the accident itself; since the plaintiff proved by a preponderance of the evidence that the defendant's vessel did strike the bridge, a presumption of negligence against the vessel arose and the burden shifted to the defendant to exculpate itself from liability. Wabash RR Co. v. The Irene Chotin, 175 F.Supp. 709 (E.D.La.1959); General American Transportation Corp. v. The Patricia Chotin, 120 F.Supp. 246 (E.D. La.1954). This he did not do. On the contrary, the credible evidence presented proved that defendant's negligence was the proximate cause of the accident.

The Tug PEGGY, the vessel, and her owner Jack Neilson, Inc., are therefore liable to the plaintiff for the damages to the bridge together with interest and all costs.

Judgment shall be entered accordingly.