U.S. PADDING CORP.,
Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 87–2211.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 8, 1988.
Decided Jan. 12, 1989.

---

1. Although writing separately, I also concur in    Judge Wellford's dissent.

pursuant to 26 U.S.C. § 1504(d). We affirm.

I

On June 19, 1981, the Commissioner determined tax deficiencies against USPC based on his determination that Trans Canada was not required to incorporate in Canada and thus did not qualify to file a consolidated return under FIRA. USPC filed suit for redetermination of the deficiencies for fiscal years ending June 30, 1978 and June 30, 1979. On October 10, 1984, a two-day trial began, and on January 20, 1987, the Tax Court found for USPC. 88 T.C. 177.

USPC is a textile manufacturer whose main customers are involved in the automobile industry. In 1977, USPC was diversifying into the garment industry, and bought a defunct Canadian manufacturer

Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., Nancy G. Morgan, Gilbert S. Rothenberg (argued), for respondent-appellant.

Paul R. Jackman, Harper Woods, Mich., Meyer & Kirk, Bloomfield Hills, Mich., Robert H. Aland (argued), Karen A. Kuenster, Maurice S. Emmer, Francis D. Morrissey, William Lynch Schaller, Baker & McKenzie, Chicago, Ill., for petitioner-appellee.

Before WELLFORD and BOGGS, Circuit Judges; and SIMPSON, District Judge.*

BOGGS, Circuit Judge.

The Commissioner appeals a decision of the United States Tax Court, which concluded that U.S. Padding Corp.'s (USPC's) wholly owned subsidiary, Trans Canada Non Woven, Ltd. (Trans Canada), was incorporated in Canada for the sole purpose of complying with Canadian laws pursuant to the Foreign Investment Review Act (FIRA). Thus, Trans Canada was eligible to file a consolidated tax return with USPC

on September 9, 1977. This purchase was conditioned on the Canadian government's approval of USPC's operation in Canada under the Foreign Investment Review Act.

FIRA requires foreign corporations to apply for permission from the Foreign Investment Review Agency (Agency) to operate in Canada. The stated purpose of the Act is to maintain Canadian control over the Canadian economy. Permission to operate a new business in Canada will be granted if the new business will be of "significant benefit" to Canada. A number of factors are considered to determine if a business would be of "significant benefit." These factors include: the effect on employment, the new business's economic activity in Canada, the participation of Canadians in the enterprise, the effect the business would have on competition, and the compatibility of the business with Canadian national policies. The Agency submits its recommendation to the Minister of Industry, Trade and Commerce. The Canadian Cabinet (also called the Governor–in–Council) makes a final decision.

---

* The Honorable Charles R. Simpson, III, United States District Judge for the Western District of Kentucky, sitting by designation.

The Act does not require foreign businesses to incorporate in Canada, but 90–95% do so incorporate, and Canadian attorneys routinely advise them to do so because their experience with the Agency indicates that, especially with respect to small businesses with few employees, which do not focus on exports, technology, or research and development, incorporation is highly advisable. Another source of the attorneys' belief is a statement in the corporate reorganization guidelines under the Act. These guidelines do not apply to new businesses, but they do state that Canada benefits from incorporated enterprises. All of the experts who testified opined that they would have advised Trans Canada to incorporate.

USPC formed a new Canadian corporation on September 26, 1977. USPC claims that it did this on the advice of numerous Canadian attorneys, who advised that FIRA approval would be easier and quicker to acquire if Trans Canada were incorporated in Canada. USPC further claims that it would have preferred not to so incorporate because Canadian incorporation made it more difficult for USPC to secure credit to finance Trans Canada. USPC also sought guidance from the Agency itself, which wrote to USPC's attorney stating that its application would be "enhanced" by Canadian incorporation, but made it clear that such incorporation was not required, and that it was not impossible for unincorporated businesses to be approved. However, USPC was advised that a business not incorporated in Canada would need to show that it would provide other benefits to Canada.

The Agency's letter, dated November 9, 1978, stated that

[t]he Agency has always applied the Act based upon the premise that investments subject to review *should be* carried on by corporations incorporated under Canadian law and the Agency's officials have always *recommended strongly* that incorporation under Canadian law be effected by the Applicant so as to *increase the likelihood* of the relevant application being allowed.

(emphasis added). The managing owner of USPC, Mr. Bolen, testified that, in his mind, "there was really no question that if we were to get an approval to operate in Canada, we would have to incorporate." (JA at 61). In addition, a Canadian "branch tax" could be avoided by incorporation, although the trial court found that these tax consequences were not considered.

On November 4, 1977, the application for FIRA approval was submitted to the Agency. Trans Canada was notified of the Agency's approval in a January 25, 1978 letter.

USPC filed consolidated tax returns in 1978 and 1979 with Trans Canada. This reduced USPC's taxes because of Trans Canada's losses of $102,220 in 1978 and $230,405 in 1979. The Commissioner ruled that Trans Canada was not a domestic corporation within the meaning of the Internal Revenue Code § 1504(d), and, thus, could not file consolidated returns. The Commissioner assessed deficiencies of $49,066 for 1978, and $108,309 for 1979.

At trial, USPC claimed that Trans Canada qualified as a subsidiary under § 1504(d) because the administrative practice of the Agency was to recommend approval when the applicant was a Canadian corporation. The Commissioner argued that the plain language of the Act indicated that only an explicit statutory or regulatory requirement of incorporation justifies the use of consolidated returns, and no such requirement existed here. In addition, the Commissioner claimed that, even if policies and practices could be considered, no policy or practice *required* incorporation in Canada.

The Tax Court reasoned that § 1504(d) states that consolidation is allowed when the "laws of a contiguous country" require incorporation in that country, and that Canadian practice and policy constituted "laws of a contiguous country." Thus, the court held that it was necessary for Trans Canada to incorporate in Canada because such incorporation was "favored if not required" by the Agency.

## II

On appeal, the Commissioner concedes that an administrative practice or policy would qualify as a "law" under § 1504(d). Thus, the only issue before us on appeal is whether Canadian practice or policy "requires" incorporation in Canada for FIRA approval. The Commissioner maintains that the legislative history of § 1504 shows Congress's intent to apply the section only where there is a binding requirement of incorporation, which he asserts is absent here. Thus, the Commissioner concludes that because the Agency itself states that incorporation is not an absolute requirement in that 5–10% of all foreign businesses permitted to operate in Canada were simply branches of foreign corporations, Trans Canada cannot qualify for use of a consolidated tax return. USPC, on the other hand, argues that all of the businesses which are branches of foreign corporations, doing business in Canada are insurance companies, airlines or inactive businesses with holdings in oil and gas. In addition, the experts at trial corroborated that they knew of no branch that was operating in *manufacturing* in Canada. Thus, because Trans Canada was to be involved in manufacturing, Canadian practice and policy acted as an absolute requirement of Canadian incorporation.

### A

In that the Commissioner has conceded the legal question of whether administrative practice and policy constitutes "laws" for purposes of FIRA, the only issue on appeal is the question of whether it was necessary for Trans Canada to incorporate to gain Canadian approval. Under Fed.R. Civ.P. 52(a), findings of fact "shall not be set aside unless clearly erroneous." The Supreme Court has defined the phrase "clearly erroneous" to mean that, " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). A reviewing court should not reverse a trial court "simply because it is convinced that it would have decided the case differently." *Ibid.*

### B

26 U.S.C. § 1501 provides that any "affiliated group of corporations shall … have the privilege of making a consolidated return. . . ." The term "affiliated group" is defined for purposes of this case under § 1504(d), titled "Subsidiary formed to comply with foreign law," which states

[i]n the case of a domestic corporation owning or controlling, directly or indirectly, 100 percent of the capital stock … of a corporation organized under the laws of a contiguous foreign country and maintained solely for the purpose of complying with the laws of such country as to title and operation of property, such foreign corporation may … be treated for the purpose of this subtitle as a domestic corporation.

26 U.S.C. § 1504(d).

First, we note that there has been only *one* case interpreting § 1504(d): *Booth Fisheries Co., v. Commissioner of Internal Revenue,* 84 F.2d 49 (7th Cir.1936). There, the taxpayer corporation sought to file a consolidated return with its Canadian subsidiary. At the time, the relevant law of Canada provided that a foreign corporation "may apply for letters under [the] act and the Secretary of State may, under certain conditions, issue such letters incorporating the shareholders of the company so applying. . . ." *Id.* at 57. The only other evidence offered was testimony of the general manager of the parent corporation that the corporation was organized in Canada "to conform to Canadian requirements to make it possible to operate there." *Ibid.* The court found that although the Canadian law was "not penal in character and not expressly prohibitory … by inference at least it would seem to raise a barrier to foreign corporations not complying therewith." *Id.* at 52. Thus, the court allowed the taxpayer to file a consolidated return.

The Commissioner seeks to distinguish *Booth* on the grounds that the Canadian statute in effect at that time "raised a barrier" to foreign businesses not incorporated in Canada, and no such barrier exists here.

■ This argument is without merit. Not one expert could identify a manufacturing company comparable to Trans Canada which has been approved by the Canadian government without Canadian incorporation. All of the experts would have advised Trans Canada to incorporate in Canada to secure approval. The Agency itself informed USPC that its application would be "greatly enhanced" by Canadian incorporation, and that, in the absence of incorporation, the business would have to show that it would provide other benefits to Canada to meet the "significant benefits" requirement of FIRA. In that Trans Canada did not plan to export, invent new products, or grow beyond its very small size, there was no reason for anyone to believe that Trans Canada could have sustained such a showing. Clearly, all of this evidence indicates that failure to incorporate would have "raised a barrier" to a foreign corporation applying to operate in Canada.

■ The Commissioner presses his point that USPC was never told that its Canadian operation would not be approved unless it incorporated in Canada, and that only such an absolute requirement of incorporation satisfies § 1504(d). Such an interpretation would severely limit § 1504(d), and would contradict both the letter and spirit of *Booth*. The Commissioner's interpretation would require that, in the absence of an absolute written requirement of incorporation, the only way to determine whether incorporation is required is to apply and allow one's application to be rejected. We decline to insist upon proof the acquisition of which requires such risk. Bureaucrats across the globe have a million ways to convey "No," without ever having quite to say so. In light of all of the relevant evidence, including the advice from the Agency itself, we believe the tax court was not clearly erroneous in its judgment that Trans Canada could not gain the Agency's approval to operate in Canada without Canadian incorporation.

■ The Commissioner's only other argument of substance is that the title of § 1504(d), "Subsidiary formed to comply with foreign law," should be read to indicate that congressional intent was that incorporation must be *required* by foreign law for an operation to qualify under § 1504(d). Although it is true that the title of a section can be used to "shed light on some ambiguous word or phrase," *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947), it is also true that titles "cannot undo or limit that which the text makes plain." *Ibid.* Here, the title does nothing other than to repeat words used in the text of the statute. Both indicate that incorporation must be for the purpose of compliance with foreign laws. As discussed above, there is ample evidence to show that 'but for' incorporation, Trans Canada would not have been allowed to operate in Canada. The statute's title does not change the practical reality with which USPC was faced.

Trans Canada incorporated for the purpose of obtaining FIRA approval. In fact, it sacrificed its ability to obtain credit with ease from American banks, with which it had long-standing relations, in order to assure Canadian approval. We find no basis for concluding that the tax court's ruling was clearly erroneous, Fed.R.Civ.P. 52(a), and we AFFIRM.

WELLFORD, Circuit Judge, dissenting:

We are called upon to interpret in this case a section of the Internal Revenue Code that has received practically no attention from the courts. *Booth Fisheries Co. v. Commissioner, I.R.S.*, 84 F.2d 49 (7th Cir.1936) interpreted a predecessor section, § 141(h) of the Revenue Act of 1928.[1]

---

1. *Booth* did not interpret § 1504(d), but, as stated by the tax court in the decision now on appeal, "Section 1504(d) was first enacted as section 141(h) of the Revenue Act of 1928."

We set out the act we are to construe in full:

SEC. 1504(d). *SUBSIDIARY FORMED TO COMPLY WITH FOREIGN LAW.* In the case of a domestic corporation owning or controlling, directly or indirectly, 100 percent of the capital stock (exclusive of directors' qualifying shares) of a corporation organized under the laws of a contiguous foreign country and maintained solely for the purpose of complying with the laws of such country as to title and operation of property, such foreign corporation may, at the option of the domestic corporation, be treated for the purpose of this subtitle as a domestic corporation.

The Canadian Foreign Investment Review Act (FIRA) governed USPC's acquisition of business assets in Canada, described by the majority opinion as "a defunct Canadian manufacturer." [2] USPC formed a Canadian subsidiary, Trans Canada, to acquire certain equipment for the new business and proposed to operate it subject to Canadian approval under FIRA. As described by one of the taxpayer's Canadian counsel, "the Act [FIRA] was passed to insure that foreign investors will only acquire or establish new businesses in Canada when such new businesses are of significant benefit to Canada." Joint Appendix at 343. I agree with the majority determination, in accord with the Tax Court's finding, that "[t]he Act does *not require* foreign businesses to incorporate in Canada." (emphasis added). It is apparent, on the other hand, that a very substantial majority of such businesses do incorporate in order to operate a new Canadian enterprise.

On this case, USPC did receive the advice of counsel that it would be of benefit to form a Canadian incorporation to operate this textile business in Canada and would likely speed approval by Canadian authorities of this acquisition. This apparently is routine advice given to interested American corporations in this kind of situation.

In the course of investigating the claim of USPC that it be permitted to file consolidated returns with Trans Canada during the years in issue and thus gain the benefit of a substantial write-off of losses of Trans Canada, Mr. Paul Saigh, appeals officer of the Detroit Division of IRS, wrote to the Canadian director of the Enforcement Division [under F.I.R.A.] to inquire:

A reading of the Act and my discussion with you leads me to conclude that a United States corporation could conduct the approved Canadian business as a branch, division or as a Canadian corporation and that Canadian law does not require incorporation solely for the purpose to hold title and the operation of property. It is also my understanding that although your office encourages or prefers that the approved Canadian business be incorporated, that the United States corporation, if it desired, would be allowed to operate the approved Canadian business in a non-corporate form.

Letter dated 2/12/81, Exh. 12–H, J/A 338.

Mr. H.F. Hagen, the Canadian director, responded on February 18, 1981:

In reply to your letter of February 12, 1981, I would confirm your conclusion and understanding as expressed in the third paragraph. I should add, however, that a U.S. applicant's chances of success before this Agency would be greatly enhanced by the act of Canadian incorporation. This, after all, would not only allow the applicant to live up more fully to the Canadian government's expectations as laid down in the "New Principles of International Business Conduct" of July 18, 1975 (copy enclosed), but, at the

---

*U.S. Padding Corp. v. Commissioner,* 88 T.C. 177, 184 (1987). The tax court also noted that "in all material respects the language of section 1504(d) has been unchanged since adoption of the 1954 code." 88 T.C. at 183.

**2.** There were two prior Canadian entities involved: Canada Hair Cloth Co. and Canada Fibretex Ltd. There is nothing in the record to indicate whether either or both were viable Canadian corporate structures that could have been acquired and operated by USPC as branches or divisions in Canada. A legal opinion of Canadian counsel merely indicates that they "had recently ceased operations as manufactures of non-woven textile products." (J/A 359).

same time, would allow such factors as "participation by Canadians in the business enterprise" and "the compatibility ... with national industrial and economic policies" to be taken into positive account when assessing the relevant proposal for "significant benefit to Canada".

Exh. 13–I, J/A 339.[3]

The Tax Court was correct in finding that there are no effective regulations, applicable to the tax years in question, interpreting § 1504(d). The tax court noted also that "Senate, House, and Conference Reports are silent" concerning § 1504(d)'s inclusion into the 1954 Tax Code. *Booth Fisheries*, decided in 1936, dealt with tax years ending in 1930 and a claim by a Delaware corporation to deduct a loss suffered by its Canadian subsidiary through means of a consolidated return. The key finding which allowed the corporate taxpayer's claim in *Booth Fisheries* was its manager's uncontradicted testimony that "I know the purpose for which this corporation was organized in Canada. It was to conform to Canadian *requirements* to make it *possible* to operate there." 84 F.2d at 51 (emphasis added).

I submit that *Booth Fisheries* was decided based on testimony that the American corporate taxpayer was required to incorporate in Canada to make it possible to operate there. The *Booth Fisheries* court assumed that the taxpayer was forced to comply with mandatory requirements of Canadian law in this respect.[4] The facts in the instant case differ materially; it is clear that FIRA did *not* in 1977 *require* incorporation of a subsidiary in Canada for an American company to operate a branch or affiliate there. To the extent the majority relies on *Booth Fisheries* as authority, that reliance is simply misplaced for the reasons indicated.

To qualify for the special benefit bestowed by 26 U.S.C. § 1504(d), a taxpayer corporation must demonstrate that its Ca-

nadian subsidiary was formed and organized *"solely* for the purpose of complying with the *laws* of such country." (emphasis added) USPC simply has not and, in my view, cannot demonstrate that it has met this clear and unequivocal requirement. At best, it has shown only that it "enhanced" its chances of obtaining prompt Canadian approval of operating in Canada by forming the Canadian subsidiary in accordance with "recommendations" of Canadian officials charged with carrying out FIRA as well as its counsel's advice. As the Canadian director, Mr. Hagen conceded, however, it might, "if it desired, have been allowed to operate the approved Canadian business in noncorporate form." Canadian law imposed no contrary requirements.

Furthermore, since the statute in question seems to provide a special benefit, a special deduction through consolidation, not available to corporate taxpayers generally, I submit it should be construed strictly. This was a matter of "legislative grace," and USPC must prove its entitlement to this special benefit. See *Weingarden v. Commissioner*, 825 F.2d 1027, 1029 (6th Cir.1987).

I find it unnecessary here to resort to legislative history to determine the meaning of the clear and unambiguous language utilized in § 1504(d). Even if one were to examine the discussion between certain Senators and a Mr. Walker, a proponent of this act, referred to by the tax court, to discern what the language under examination meant, it would be of no assistance to USPC. Mr. Walker was concerned about operations in Mexico and he stated that he knew of no other country, besides Mexico, that "required the organization of the subsidiary in order to operate ... there." *See U.S. Padding Corp. v. Commissioner*, 88 T.C. 177, 186 (1987). Walker emphasized that the act was "limited" and it was to apply "only to companies which in order to

---

**3.** On November 9, 1978, Mr. Hagen had written to USPC's lawyers that the Act was applied "upon the premise that investments subject to review should be carried on by corporations incorporated under Canadian law," and that Canadian officials "always recommended strongly"

Canadian incorporation "so as to increase the likelihood" of approval.

**4.** The law itself was not in evidence and the Court did not take judicial notice of it.

operate in a foreign country, *have* to organize a foreign corporation so to operate." *See U.S. Padding*, 88 T.C. at 186 (emphasis added). That is not the case applicable to USPC and its Canadian subsidiary.

I would therefore REVERSE the decision of the Tax Court and sustain the position of the Commissioner.