**KOHLER CO. and Subsidiaries, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 94–628 T.

United States Court of Federal Claims.

Nov. 3, 1995.

Robert E. Dallman, Timothy A. Nettesheim, and Vincent J. Beres, Milwaukee, Wisconsin, for plaintiff.

Stuart J. Bassin, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HODGES, Judge.

This case raises two issues involving Kohler Co., a Wisconsin corporation, that otherwise are unrelated: (1) Was Kohler's foreign subsidiary required to incorporate in Canada so that it could be included in Kohler's consolidated return pursuant to United States tax laws and regulations; and (2) Was the taxpayer's income clearly reflected using the Last In, First Out (LIFO) method of accounting when it treated goods purchased at a substantial discount the same as goods later manufactured. The answer in both instances is No.

### I.

### OVERVIEW

#### A. CANADIAN SUBSIDIARY

IRS permits an American company to include a foreign subsidiary in its consolidated return only if the subsidiary must incorporate in the foreign country to do business. Kohler pursued a business opportunity in Canada. In that country, a company controlled by non-residents must gain approval from the Canadian Government before starting business there. Although the statutory factors considered by the Government for approval do not include incorporation in Canada, Kohler was advised by Canadian attorneys that incorporating in Canada would enhance its chances of approval.

Kohler incorporated in Canada and sought a refund on its consolidated tax return for calendar year 1985 because of the subsidiary's loss. We determined at trial that Kohler was not required to incorporate in Canada to do business there within the meaning of applicable regulations. Kohler's decision to incorporate in Canada was driven by other incentives. For example, plaintiff wanted to complete the transaction by the end of the year and thought that applying without incorporating might delay the process. More importantly, Kohler was applying for a grant from another Canadian agency for which incorporation was a prerequisite. The grant was a government incentive for economic development in economically depressed areas.

Kohler incorporated its subsidiary in Canada to accommodate a self-imposed deadline and to become eligible for a $4 million grant. We cannot conclude that plaintiff incorporated in Canada because it was required by law to do so.

### B. INVENTORY ISSUE

Congress has given the Commissioner of Internal Revenue discretion to change a taxpayer's accounting system if it does not clearly reflect income. The entire opening inventory of plaintiff's subsidiary in its first year of existence consisted of goods purchased at a substantial discount. The Commissioner determined that the taxpayer's LIFO accounting method did not reflect income from the sale of these items. The issue is whether, under the dollar-value LIFO method of accounting, those bargain-purchase goods may be grouped with physically similar goods manufactured or purchased at normal costs.

LIFO inventory accounting is an acceptable method where the last goods manufactured are considered to be the first goods sold. It benefits the taxpayer by neutralizing the effects of inflation. For this system to work properly, the goods that a company manufactures must be organized into groups of similar items that are tracked together. For the purposes of this decision, the goods purchased at a bargain price were physically identical to goods later produced. Plaintiff believes that the cost difference in the items should not affect the manner in which physically identical goods are accounted for under LIFO.

Tracking bargain-purchase goods with manufactured goods produced at cost avoids or postpones relatively higher income from the sale of discounted goods. Because of the LIFO assumption of cost flows, in fact, the goods purchased at a discount might never be included in income. Under LIFO, goods not considered sold in the year acquired are less likely to be considered sold in subsequent years. The unsold goods are insulated by another layer of inventory every year that the number of goods sold is less than those manufactured or purchased. Thus, the income from the sale of those goods might never be realized. For that reason, we must hold that the Commissioner reasonably determined that plaintiff's method of accounting did not clearly reflect income.

## II.

### DISCUSSION

#### A. INCLUSION OF FOREIGN SUBSIDIARY IN CONSOLIDATED RETURN

Plaintiff seeks to amend its consolidated tax return for the 1985 calendar year to include losses sustained by Kohler, Ltd., a subsidiary Canadian corporation. Kohler, Ltd. was created in 1985 by Kohler Co. during its attempt to purchase a factory in Canada. A domestic corporation may include in its consolidated return "a corporation organized under the laws of a contiguous foreign country and maintained solely for the purpose of complying with the laws of such country as to title and operation of property." 26 U.S.C. § 1504(d) (1988).

Canada's Foreign Investment Review Act (FIRA) requires a company controlled by nonresidents of Canada to file an application with the Foreign Investment Review Agency when the company seeks to acquire control of a Canadian business or to establish a new business in Canada. See generally U.S. Padding Corp. v. Commissioner, 88 T.C. 177, 179–181, 1987 WL 49267 (1987), aff'd, 865 F.2d 750 (6th Cir.1989) (detailing the process of application approval). The Agency recom-

mends approval of the application if the business venture would provide "significant benefit" to Canada. The Cabinet makes the final determination of approval based on the Agency's recommendation.

The Agency issues press releases describing certain factors used to determine "significant benefit." These factors include: Canadian residents' participation on the board of directors or as shareholders, use of Canadian parts and services, competition with Canadian industries, and the effect on employment and technology. *See U.S. Padding,* 88 T.C. at 180 n. 5. Incorporation in Canada is not listed as a factor. The definition and relative weight of each factor may depend on the current political climate and the circumstances of a particular application. Thus, the decision-making process is uncertain and fluid.

Due to the uncertainty of the approval process, plaintiff employed experts on FIRA approval to assist in preparing its application. These experts believed that incorporation in Canada would improve Kohler's chance of approval, but none stated that incorporation was necessary. It was advisable because Kohler desired to begin operations quickly and needed a $4 million grant from the Canadian Government.

■ Kohler felt that it had to present its most positive case to the Agency. It had a self-imposed deadline to begin operations and needed to avoid any reason for delay in approval. Kohler could have amended its application to offer incorporation had Canadian authorities suggested it to obtain approval, but an amendment could have delayed the process by three months or more. Kohler chose to apply initially as a Canadian corporation. It could not afford the delay for an amendment because of its own business timetable.

Kohler decided that an acceptable rate of return on this investment could be achieved only with a grant from the Canadian Industrial Review Board. Plaintiff's consultants did not believe that the Canadian Government would provide such financial assistance to a branch office of a foreign corporation. Plaintiff determined that incorporating in Canada was essential to receiving the grant. It is likely that Kohler would not have qualified for the grant without incorporating in Canada.

■ The Tax Court has allowed a domestic corporation to include a subsidiary incorporated in Canada in its consolidated tax return because of the FIRA approval process. *U.S. Padding,* 88 T.C. 177. In that case, however, incorporation in Canada was the sole reason that the subsidiary gained FIRA approval. "Without incorporation, the business had little else in the way of benefits to offer." *Id.* at 181. Kohler had more than incorporation to offer Canadian authorities; it received approval marks in nine of the ten categories used in determining "substantial benefit." Most importantly, Kohler proposed to open a manufacturing plant using Canadian supplies and parts and provide numerous Canadian jobs in a depressed and disadvantaged area.

■ Congress permits a parent corporation to include its foreign subsidiary in a consolidated return if the subsidiary was "organized under the laws of a contiguous foreign country and maintained solely for the purpose of complying with the laws of such country as to title and operation of property." 26 U.S.C. § 1504(d). An eligible company is one that would not be allowed to do business in the foreign country without incorporating there.[1]

Kohler was not required to operate as a Canadian corporation to comply with the laws of Canada. Incorporation might have enhanced a good application, but it was not mandatory. Plaintiff wanted to obtain a grant from the Canadian Government. Another company might have been willing to do business there without the grant. Incorporation was not essential.

---

1. For the purposes of this opinion, "laws of such country" include both statutes and the practice and policy of an agency enforcing those laws.

## B. TREATMENT OF BARGAIN-PURCHASE INVENTORY

Sterling Faucet Company was formed in April 1978, and soon after it acquired certain assets and liabilities of Rockwell International Corporation in a bulk purchase.[2] The inventory purchased comprised the entire opening inventory of Sterling. Sterling valued the inventory received in that purchase at a discount because of the bargain purchase, and elected the LIFO method of accounting for inventory. Thereafter, Sterling placed manufactured inventory and the Rockwell inventory in the same natural business pool and treated them as the same item for accounting purposes. The Commissioner of Internal Revenue found that Sterling's method of accounting did not clearly reflect income and made adjustments pursuant to 26 U.S.C. § 481(a). Plaintiff asserts that its method of accounting clearly reflected income and that the IRS could not mandate another method.

Taxable income is computed using the method of accounting regularly used by the taxpayer. 26 U.S.C. § 446(a). If the method does not clearly reflect income, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." 26 U.S.C. § 446(b).

> It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income.

Treas.Reg. § 1.446–1(a)(2).

The Commissioner has discretion to determine whether an accounting method "clearly reflects income" and the proper inventory accounting method that should be used. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532–33, 99 S.Ct. 773, 781–82, 58 L.Ed.2d 785 (1979). The Commissioner concluded that treating bargain-purchase inventory and inventory acquired or manufactured at normal costs as the same item under the "dollar-value" LIFO method did not clearly reflect income. Thus, the issue of this part of the case is whether plaintiff's method of accounting clearly reflects income.

### 1. Clear Reflection of Income

#### a. LIFO

Income generally equals sales minus the cost of goods sold. The method of accounting determines which costs are included in the income calculation. Under the LIFO method of accounting, the goods sold first are those more recently purchased or manufactured. *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. 708, 722, 1981 WL 11244 (1981). For accounting purposes, inventory is the goods that are not sold at the end of the year. The value of LIFO inventory is that of the earliest-purchased · or manufactured goods.

Under LIFO, if the goods sold in a year are less than those manufactured or purchased in that year, all income is based on the current costs of goods; a layer of inventory consisting of the goods not sold is created. If more goods are sold than manufactured or purchased during the year, a liquidation or decrement of inventory occurs, and income is based both on current costs and older, historic costs of goods.

Although LIFO is a recognized method of accounting, it is contrary to a basic assumption of inventory movement—that older goods usually are sold first. *See F.W. Boelter Co., Inc. v. United States*, 12 Cl.Ct. 120, 121 n. 1 (1987). On the other hand, LIFO can provide a more accurate determination of current income. It eliminates the artificial "inventory profits" from inflationary increases in the cost of goods, and reflects more closely the current cost of replacement. *Fox Chevrolet*, 76 T.C. at 723.

If the taxpayer were to use the First In, First Out (FIFO) method, it would realize greater income earlier because lower priced goods are the first sold. However, that greater income would not account for the cost of replacing goods in inventory. Under

---

2. Kohler Company purchased all of the outstanding stock of Sterling Faucet in 1984 and treated it as a wholly owned subsidiary for tax purposes that year.

LIFO, the higher income from the sale of lower cost, earlier-produced or purchased goods is deferred until the business depletes its prior-year inventory. LIFO allows the taxpayer to match current costs with current revenues more accurately, but usually it results in lower taxes. This is acceptable because the lower taxes on lower income is attributable to inventory inflation.

### b. Items and Pools

■ The goal of a taxpayer's accounting method should be to ensure that factors other than inflation do not affect the income calculation. To isolate the effect of inflation from other reasons that costs may increase from year to year, it is important to group like goods together and to separate dissimilar goods. *Amity Leather Products Co. v. Commissioner*, 82 T.C. 726, 731–34, 1984 WL 15569 (1984). "A system which groups like goods together and separates dissimilar goods permits cost increases attributable to inflation to be isolated and accurately measured." Mertens Law of Fed.Income Tax § 16.86 at 381 (1995). "The more homogeneous that each category can be made, the better it will screen out cost increases caused by non-inflationary factors, thus producing a clearer reflection of income than would be possible with categories containing heterogenous agglomerations of goods." *Hamilton Industries v. Commissioner*, 97 T.C. 120, 132, 1991 WL 138574 (1991).

These groupings are important under a dollar-value accounting system because actual goods are not tracked; inventory is monitored by costs. Mertens § 16.85 at 379. The dollar-value method measures increases or decreases in inventory in terms of total dollars rather than units.[3] Dollar-value accounting is especially helpful to a taxpayer with an extensive inventory of goods. *See* Mertens § 16.85 at 380. A taxpayer may treat goods that have relatively minor differences as the same item under the dollar-value method. However, to produce a clear reflection of income, the goods contained in a taxpayer's item categories must have similar characteristics. Mertens § 16.86 at 381. The dollar-value LIFO method depends on grouping the inventory goods into "pools" and "items" that will meet this goal. *Wendle Ford Sales, Inc. v. Commissioner*, 72 T.C. 447, 1979 WL 3848 (1979). Pools reflect the taxpayer's natural business unit—major lines, types, or classes of goods. Treas.Reg. § 1.472–8(c). Items are subdivisions of pools.[4]

The Commissioner determined that the goods purchased at a discount from Rockwell could not be considered the same item as those goods later acquired or produced by Sterling.[5] LIFO treatment in this instance is not consistent with the theory that income differences under LIFO accounting are attributable only to "inventory profits" or inflation, according to IRS. Where the taxpayer's inventory has a cost basis that differs from current-year costs for reasons other than inflation, the taxpayer avoids more than inflation; it avoids income attributable to other factors. Thus, the Commissioner contends that the goods should be treated as separate items so that income is realized appropriately.

■ Plaintiff argues that the Commissioner cannot change the taxpayer's method of accounting when its method accords with generally accepted accounting principles, is consistently applied, and is consistent with IRS regulations. Treas.Reg. § 1.446–1(a)(2).

---

3. We do not discuss the intricacies of the dollar-value method or the methods of computing dollar-value LIFO pools such as double extension, index, or link-chain. We did not take testimony on these matters at trial because counsel agreed they were unnecessary for this decision.

4. The parties agreed that the technical distinction between items and pools does not matter for the purposes of this opinion.

5. The Commissioner's decision rested mainly on *Amity Leather*, 82 T.C. 726, but also indicated that the goods should not be considered part of the same pool because the taxpayer did not acquire the raw materials and process them into finished goods. The parties do not address that reasoning and we find it immaterial to this decision. We review the result, not the Commissioner's reasoning. *Helvering v. Gowran*, 302 U.S. 238, 245–46, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1937); *E.I. du Pont de Nemours & Co. v. United States*, 221 Ct.Cl. 333, 350, 608 F.2d 445 (1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980).

These factors are not conclusive. A method consistent with generally accepted accounting principles does not necessarily clearly reflect income. *Thor Power Tool,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785. No regulations directly govern this question. Ultimately, "no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income." Treas. Reg. § 1.446–1(a)(2).

The Tax Court has ruled that goods that are physically similar but different in cost basis because of a discount purchase should be treated as different items for LIFO inventory purposes. *Hamilton Industries,* 97 T.C. at 120. The taxpayer in that case had purchased the inventory assets of two companies at discounts of 96% and 60% of the value of the inventory in the hands of the seller. The substantial discount indicated that the purchased inventory "possessed materially different cost characteristics" from later-purchased or produced inventory. *Hamilton Industries,* 97 T.C. at 137. Treating the goods as the same item was contrary to the purpose of the LIFO method, which was "not intended to permit taxpayers to include in cost of goods sold cost increases attributable to the replacement of goods with low cost characteristics with goods possessing higher cost characteristics." *Id.* at 138 (citation omitted). Allowing the taxpayer to treat the goods as the same item as later-acquired goods would distort income because the cost characteristics were disparate. *Id.* at 139. The Tax Court determination can be made only on a case-by-case basis:

> We do not mean to suggest that every bargain purchase of inventoriable property will require the creation of new items within the dollar value LIFO pool, as occasional purchases concluded on advantageous terms are to be expected in the course of normal business activities. Moreover, where a taxpayer uses LIFO, the gain realized upon sale of such goods probably will be recognized within a short time, unless an increase in closing inventory prevents such bargain cost from flowing into cost of goods sold. Consequently, an isolated bargain purchase in the course of an ongoing business differs materially from the case where a taxpayer attempts to value its entire base-year inventory at bargain cost.

*Id.* at 139 n. 6.

Under this reasoning, a smaller discount would not necessarily create cost characteristics requiring treatment different from subsequently purchased or manufactured goods. The 96% discount value was entirely arbitrary in *Hamilton Industries* because it was a plug representing the purchase price not allocated to other assets. The Tax Court offers little explanation of why the 60% discount mandated separate item treatment, so it is not clear where the Tax Court would find a bargain element substantial enough to cause "inventory acquired to assume a different character." In our case, the goods were purchased at a discount of roughly 50%.

Plaintiff contends that the IRS eventually will get its taxes because the costs assigned to bargain-purchase inventory will flow into income when there is a decrement of the bargain layer, or when the business is sold. In this case, some of those bargain-layer costs did flow out and the remainder may be realized eventually. Plaintiff's expert agrees that the discount value must be considered in determining whether the method of accounting clearly reflects income. At some point, the discount may distort income and should be treated as a different item. For example, an extreme discount might indicate an arbitrary assignment of value or suggest that an item was obsolete, unmarketable or damaged.

Defendant concedes that a taxpayer frequently buying goods at a discount could treat those goods as the same items even though they may have different cost characteristics. The test, according to defendant's expert, should be whether the discount purchase occurs in the taxpayer's normal course of business. *Cf. Hamilton Industries,* 97 T.C. at 139 n. 6 (suggesting that an occasional discount purchase "in the course of normal business activities" might not necessitate different item treatment). A taxpayer which buys discount goods once during the course of its business may not have to treat the items differently, depending on the quantity and the timing of the discount purchase.

However, defendant maintains that goods obtained in a nonrecurring transaction of significant magnitude—a bulk purchase at a large discount—should be treated as different items from those subsequently manufactured or purchased. The outcome would depend on the circumstances of each taxpayer and transaction. In this case, defendant's expert concluded that different item treatment was necessary because the bulk purchase constituted Sterling's entire opening inventory and was obtained at a 50% discount.

■ The Commissioner has broad discretion to determine whether an accounting method clearly reflects income. *Thor Power Tool*, 439 U.S. at 532, 99 S.Ct. at 780–81. We will not interfere with that determination unless it is clearly unlawful. *Id.* at 532, 99 S.Ct. at 780–81 (citation omitted). In this instance, the Commissioner's decision was reasonable. Sterling's entire opening inventory consisted of a large bulk purchase. The cost basis assigned to that inventory was approximately 50% less than the replacement cost of those goods. Grouping these goods with later-purchased or manufactured goods under dollar-value LIFO accounting would have prevented the income from the sale of these goods from being realized for tax purposes for an unknown period of time, perhaps forever. In short, plaintiff's reported income was less than it should have been from sale of the discounted goods. While the deferral of higher income is an acceptable result of the LIFO method of accounting, we cannot find that the method was intended to defer the flow of lower costs that are not the result of inflation.

### 2. Change in Method of accounting

■ The Commissioner adjusted plaintiff's inventory pursuant to 26 U.S.C. § 481(a) to prevent the omission of income because of the change to plaintiff's method of accounting. Plaintiff argues that the Commissioner's action was improper because the taxable years affected by the change in treatment were barred by the three-year statute of limitations and the adjustment was not consistent with 26 U.S.C. § 481(a).[6] The section 481 adjustment is made to prevent the omission or duplication of amounts by reason of the change in tax returns filed after the change in accounting. *Cameron Iron Works, Inc. v. United States*, 224 Ct.Cl. 17, 25 (1980).

■ Plaintiff argues that the 1978 and 1979 taxable years (when Sterling would have realized income on the bargain-purchase inventory treated as a separate item from other inventory) are closed to adjustment. However, "section 481 would be virtually useless if it did not affect closed years." *Graff Chevrolet Company v. Campbell*, 343 F.2d 568, 572 (5th Cir.1965) (footnote omitted). The purpose of section 481 is to prevent a distortion of income and a windfall to the taxpayer as a result of a change in accounting method that otherwise would be barred by the statute of limitations. *Graff Chevrolet*, 343 F.2d at 572; *Western Casualty & Surety Co. v. Commissioner of Internal Revenue*, 571 F.2d 514, 519 (10th Cir.1978).

> When a taxpayer uses an accounting method which ... defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it. Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest.

6. In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—
　　(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
　　(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.
26 U.S.C. § 481(a).

Note, *Problems Arising from Changes in Tax–Accounting Methods*, 73 Harv.L.Rev. 1564, 1576 (1960), *quoted in Graff Chevrolet*, 343 F.2d at 572. "The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change." *Graff Chevrolet*, 343 F.2d at 572, *quoted in Cameron Iron Works*, 224 Ct.Cl. at 25–26. Thus, section 481 allows the Commissioner to make adjustments in an open year to closed taxable years.

▮▮▮ The section 481 adjustment is proper if it is necessary to prevent the omission of income because of the change in the method of accounting. *See Hamilton Industries*, 97 T.C. at 125 (citing *Graff Chevrolet*, 343 F.2d at 572). Treatment of an item in inventory is a change in a method of accounting. Treas.Reg. § 1.446–1(a)(1); *Hamilton Industries*, 97 T.C. 120. In this instance, the taxpayer's method of accounting did not clearly reflect income. The improper treatment of inventory in the base year affects inventory in subsequent years. The Commissioner's change corrects the earlier, improper item treatment. However, under the change, the bargain-purchase inventory would be liquidated in a closed taxable year and the income would never be realized. An adjustment in the earliest open taxable year ensures that the income will not be omitted. Thus, the adjustment is proper to prevent the omission of income. *See Hamilton Industries*, 97 T.C. at 127–28.

## CONCLUSION

Plaintiff is not entitled under 26 U.S.C. § 1504(d) to amend its return to include those losses attributable to Kohler Ltd., its Canadian subsidiary. Incorporation in Canada was not required by law to do business there. The Commissioner's decision that plaintiff's method of accounting did not clearly reflect income from bargain-purchase goods is not unreasonable. An adjustment to inventory under 26 U.S.C. § 481 in response to that change in the taxpayer's method of accounting was proper. The Clerk will enter judgment for defendant. No costs.