**KOHLER CO. AND SUBSIDIARIES,**
Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant–
Appellee.**

No. 96–5043.

United States Court of Appeals,
Federal Circuit.

Sept. 17, 1997.

Michael J. Conlan, Quarles & Brady, Milwaukee, WI, argued, for plaintiff-appellant. With him on brief were Patricia A. Hintz and Michael J. Spector.

Andrea R. Tebbets, Attorney, Appellate Section, Tax Division, Department of Justice, Washington, DC, argued, for defendant-appellee. On brief with her were Loretta C. Argrett, Assistant Attorney General, and Jonathan S. Cohen, Attorney. Of counsel was Gary R. Allen, Chief, Appellate Section.

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

This tax case presents us with two distinct issues. Kohler Co. and subsidiaries ("Kohler") appeal from the November 8, 1995 final judgment of the United States Court of Fed-

eral Claims in *Kohler Co. v. United States*, 34 Fed. Cl. 379 (1995). The Court of Federal Claims held that the Internal Revenue Service ("IRS") correctly precluded Kohler Co. from including Kohler Ltd., its wholly-owned Canadian subsidiary, in its consolidated tax return for 1985. *Id.* at 387. The court also held that the IRS's determination that Kohler's 1984 income was not clearly reflected through the use of the last-in, first-out ("LIFO") method of inventory accounting was not unreasonable; and that the IRS's related adjustment to Kohler's 1984 income was not barred by the statute of limitations. *Id.* We affirm.

## BACKGROUND

### I.

Kohler Co. is a Wisconsin corporation and a well-known manufacturer of plumbing products. In 1985, it purchased a plumbing fixture manufacturing facility in Cornwall, Ontario. *Id.* at 381. Because it was controlled by non-residents of Canada, Kohler Co. was required to secure approval under Canada's Foreign Investment Review Act ("FIRA") before acquiring control of the manufacturing facility.[1] *Id.* FIRA approval, in turn, was ordinarily conditioned on whether the Foreign Investment Review Agency (the "Agency") determined that the venture would be of "significant benefit" to Canada. *Id.* at 381–82. Although the Agency would consider whether a business attempting to gain FIRA approval was incorporated in Canada, approval was not conditioned on such incorporation. In fact, the Agency would take into consideration a number of factors, including:

(a) the effect of the new business or acquisition on the level and nature of economic activity in Canada, including employment, exports, and utilization of Canadian products and services;

(b) the degree and significance of Canadian participation in the enterprise;

(c) the enterprise's effect on productivity, industrial efficiency, technological de-

velopment, product innovation, and product variety in Canada;

(d) the enterprise's effect on competition within any Canadian industry; and

(e) the enterprise's compatibility with national industrial and economic policies.

On January 9, 1985, Kohler Co. incorporated Kohler Ltd. under the laws of Ontario. It did so on the advice of counsel, who informed Kohler Co. that incorporation would facilitate FIRA approval the first time through the approval process. Kohler also incorporated as part of its effort to obtain funding available only to Canadian corporations.[2] *Id.* at 382.

Kohler's FIRA application, which stated that Kohler Ltd. would be incorporated in Canada, was allowed on December 6, 1984. In the agency press release announcing the approval, nine out of ten "principal factors of assessment of significant benefit to Canada" were checked off for Kohler: increased employment, new investment, increased resource processing or use of Canadian parts and services, additional exports, Canadian participation, enhanced technological development, improved product variety and innovation, beneficial impact on competition, and compatibility with industrial and economic policies.

Kohler Co. filed its original consolidated tax return for 1985 on September 15, 1986. At that time, it did not include Kohler Ltd. in the return. On September 28, 1989, Kohler Co., seeking to amend its 1985 consolidated return to include a net operating loss sustained by Kohler Ltd. for that year, filed an informal claim for a refund in the amount of $724,458. The IRS did not act on the claim.

### II.

The inventory issue arises out of Kohler Co.'s acquisition of Sterling Plumbing Group, Inc. ("Sterling"). In 1978, Sterling purchased certain assets and liabilities of Rockwell International Corporation ("Rockwell") at a substantial discount. Sterling's entire

---

1. FIRA is no longer in effect.

2. Kohler Co. was advised that in order to receive a $4 million Canadian Industrial Renewal Board

("CIRB") grant, which it was given on December 21, 1984, it would have to incorporate Kohler Ltd. in Canada.

opening inventory consisted of the Rockwell merchandise. For 1978, its initial taxable year, Sterling elected the LIFO method to account for the Rockwell merchandise and subsequently manufactured inventory. Sterling treated the finished goods purchased from Rockwell as the same "items" as identical finished goods manufactured by it after the purchase. Kohler Co. acquired all of the outstanding stock of Sterling in March of 1984. Sterling's operations were included in Kohler Co.'s consolidated income tax return for ten months of calendar year 1984 and for all subsequent tax years.

Upon auditing Kohler Co.'s 1984 consolidated return, the IRS determined that Sterling's method of inventory accounting did not clearly reflect its income. Pursuant to 26 U.S.C. § 446(b), the IRS changed Sterling's accounting method by treating the bargain purchase goods acquired from Rockwell as separate items from those subsequently manufactured. As a result of this change, the value of Sterling's inventory, determined at the end of the 1984 tax year, was increased by $1,898,096. Because the accounting method change meant that the bargain purchase inventory acquired would have been liquidated in the years 1978 and 1979, the IRS adjusted Kohler Co.'s income upward for 1984 by $1,898,096 pursuant to 26 U.S.C. § 481 (1994). Kohler Co. paid the resulting additional tax liability in the amount of $870,831 and thereafter claimed a tax refund for 1984. The IRS denied the refund claim on April 29, 1994.

### III.

On September 19, 1994, Kohler filed a complaint in the Court of Federal Claims seeking the refunds it had claimed from the IRS in connection with the foreign subsidiary and inventory accounting claims. On November 3, 1995, following a trial, the court denied Kohler's claims and entered final judgment in favor of the United States. *Kohler*, 34 Fed. Cl. at 379. Addressing the foreign subsidiary issue, the court found that Kohler Ltd. was not required to incorporate in Canada in order to do business there, but was "driven by other incentives," i.e., "to accommodate a self-imposed deadline and to

become eligible for a $4 million grant." *Id.* at 381. Speaking to the inventory accounting issue, the court held that "the Commissioner reasonably determined that [Sterling's] method of accounting did not clearly reflect income." *Id.* This appeal followed.

### DISCUSSION

### I.

■ We have exclusive jurisdiction over appeals from final judgments of the Court of Federal Claims. 28 U.S.C. § 1295(a)(3) (1994). We review a judgment entered following a trial to determine whether it is incorrect as a matter of law or is premised on clearly erroneous factual determinations. *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1578 (Fed.Cir.1993). In this case, neither party disputes the trial court's findings of fact. On appeal, Kohler raises both of the issues it presented to the Court of Federal Claims. We address the foreign subsidiary issue first.

■ Foreign corporations do not generally qualify as "includible corporations" for the purpose of filing consolidated income tax returns, 26 U.S.C. § 1504(b)(3) (1994).[3] However, a United States corporation may include in its consolidated tax return operating losses of a wholly-owned subsidiary which is organized under the laws of a contiguous foreign country, if the subsidiary is "maintained solely for the purpose of complying with the laws of such country as to title and operation of property." 26 U.S.C. § 1504(d). At issue in this case is whether the Court of Federal Claims properly upheld, based on the court's finding that Canadian incorporation was not necessary for Kohler Ltd. to conduct business in Canada, the IRS's determination that Kohler Co. was prohibited from including the losses of Kohler Ltd. in its consolidated tax return.

In arguing that the Court of Federal Claims erred, Kohler relies on *U.S. Padding Corp. v. Commissioner*, 865 F.2d 750, 753 (6th Cir.1989). In *U.S. Padding*, the Sixth Circuit affirmed the decision of the United States Tax Court which held that U.S. Pad-

---

**3.** Section 1504(b)(3) provides that "the term 'includible corporation' means any corporation except ... Foreign corporations." 26 U.S.C. § 1504(b)(3).

ding Corp.'s wholly-owned subsidiary, Trans Canada Non Woven Ltd. ("Trans Canada"), was eligible to file a consolidated tax return with U.S. Padding Corp. pursuant to 26 U.S.C. § 1504(d). *Id.* at 754. The Tax Court based its decision on its conclusion that Trans Canada had been incorporated in Canada for the sole purpose of complying with FIRA. *See U.S. Padding Corp. v. Commissioner*, 88 T.C. 177, 1987 WL 49267 (1987).

Kohler argues that the domestic corporation in *U.S. Padding* was allowed to include in its consolidated tax return a subsidiary incorporated in Canada to secure FIRA approval even though incorporation was not an express requirement for approval. Kohler likens the facts in *U.S. Padding* to those here, claiming that in both cases the taxpayer hired an expert attorney who recommended incorporation as a means of securing FIRA approval. *See U.S. Padding*, 865 F.2d at 752 ("USPC was advised that a business not incorporated in Canada would need to show that it would provide other benefits to Canada."). Kohler asserts that even though it was able to provide other benefits to Canada, its FIRA application might still have been rejected had it not incorporated Kohler Ltd. in Canada.

For its part, the government argues that the need to comply with FIRA does not satisfy section 1504(d) unless incorporation was an absolute requirement of the FIRA approval process. The government contends that *U.S. Padding* stands for the proposition that the code section is not satisfied unless "'but for' incorporation, [the subsidiary] would not have been allowed to operate...." *Id.* at 754. The government also contends that, in any event, the facts of *U.S. Padding* distinguish it from this case. Importantly, the government notes, the Tax Court in *U.S. Padding* rested its conclusion on the premise that "[w]ithout incorporation, the business had little else in the way of benefits to offer," *U.S. Padding*, 88 T.C. at 181; it "did not plan to export, invent new products, or grow beyond its very small size," *U.S. Padding*, 865 F.2d at 754. The Kohler operation, in contrast, was based on new technology and was expected to create 75 jobs immediately

and 180 jobs by 1988, to increase its use of Canadian parts and services to 75 percent in three years, and to generate exports in excess of Cdn $4 million in its first year, rising to nearly Cdn $24 million by 1988. The government also notes that Kohler Ltd. won approval in nine out of ten benefit categories, compared to only four for the taxpayer in *U.S. Padding*.

Lastly, the government posits a policy argument: "[t]o allow a Canadian or Mexican subsidiary to join in a consolidated return when foreign incorporation is not required by foreign law, but is merely favored by corporate interest, is to encourage the parent to avoid United States taxes by opting to include a loss-making subsidiary in its consolidated return, while having a profitable subsidiary file a separate return."

As noted, the statute provides that the operating losses of a wholly-owned subsidiary organized under the laws of a contiguous foreign country may be included in the consolidated tax return of its United States parent corporation if the subsidiary is "maintained solely for the purpose of complying with the laws of such country as to title and operation of property." 26 U.S.C. § 1504(d). The facts make it clear that Kohler Ltd.'s Canadian incorporation was not "solely for the purpose of complying with the laws of [Canada] as to title and operation of property." Canadian law did not expressly require such incorporation, and there is nothing in the record to indicate that Canadian officials, in the Agency or otherwise, stated that such incorporation was necessary for FIRA approval. Rather, Canadian incorporation was the result of a strategy decision on the part of Kohler Co. which determined that such incorporation would increase the likelihood of prompt FIRA approval. Incorporation was also necessary in order for Kohler Co.'s Canadian business venture to be eligible for the Cdn $4 million CIRB grant. We believe that, by its terms, section 1504(d) does not contemplate consolidated tax return treatment in circumstances such as those presented here. We agree with the government that section 1504(d) is not satisfied unless, but for incorporation, the foreign subsidiary would not have been allowed to operate.[4]

---

4.  Because, as noted, there was no requirement of any kind that Kohler Co. incorporate its business

venture in Canada, it is not necessary for us to

As far as *U.S. Padding* is concerned, we conclude that the taxpayer in that case was faced with constraints not faced by Kohler Co. It appears that the court in *U.S. Padding* held as it did based, to a large extent, on the belief that if Trans Canada had not incorporated in Canada it would have had to make a showing, which it could not, that it could have provided other benefits to Canada. The Sixth Circuit stated that: "[i]n that Trans Canada did not plan to export, invent new products, or grow beyond its very small size, there was no reason for anyone to believe that Trans Canada could have sustained" a showing that "it would provide other benefits to Canada to meet the 'significant benefits' requirement of FIRA." *U.S. Padding,* 865 F.2d at 754. Such is not the case here. Thus, *U.S. Padding* is distinguishable on its facts from this case. We find no error in the Court of Federal Claims' decision upholding the determination of the IRS that Kohler Co. was not entitled to amend its 1984 return to include the losses attributable to Kohler Ltd.

## II.

We turn next to the inventory issue. As noted, the IRS changed Sterling's accounting method for tax year 1978. This change resulted in an adjustment in Kohler's income, and an increase in its tax liability, for tax year 1984. As a preliminary matter, Kohler contends, as it did before the trial court, *see Kohler,* 34 Fed. Cl. at 386, that at the time of the audit in 1984, the 1978 tax year was closed for assessment purposes by the statute of limitations, which provides:

General Rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)....

26 U.S.C. § 6501(a) (1994). Kohler asserts that 26 U.S.C. § 481(a), the statutory provision under which the IRS made the adjustment at issue, does not override the statute of limitations when the proposed adjustment relates to one isolated transaction (in this

case, Sterling's discount purchase of inventory from Rockwell).

Section 481(a) provides:

(a) **General Rule.**—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

*Id.*

The statute of limitations issue which is before us here was addressed by the United States Tax Court in *Hamilton Industries, Inc. v. Commissioner,* 97 T.C. 120, 1991 WL 138574 (1991). As pointed out by the Tax Court:

To avoid omissions or duplications occurring solely by reason of an accounting method change, section 481 permits the Commissioner to include in the required adjustment amounts attributable to taxable years with respect to which assessment is barred by the statute of limitations.

*Id.* at 125. In this case, as a result of the change for 1978 from Sterling's LIFO method, the IRS included in the adjustment for Kohler Co. for 1984 amounts attributable to 1978, a taxable year with respect to which assessment was barred by the statute of limitations set forth in 26 U.S.C. § 6501(a). The Tax Court specifically held in *Hamilton Industries* that "a change in the method of valuing closing inventory constitutes a change in method of accounting to which

decide the question of whether section 1504(d) requires that foreign incorporation result from express statutory or regulatory provisions in the

contiguous foreign country or whether the requirement for incorporation may be imposed in some other manner.

section 481 applies." *Id.* at 126. The fact that the challenged LIFO application relates to only a single isolated transaction—the purchase of the Rockwell bargain priced inventory—does not defeat the application of section 481 where, as here, the transaction affected the LIFO index which, in turn, affected the reflection of income in subsequent tax years. In such a case, the treatment of the transaction effects a change in the taxpayer's "method of accounting," thus invoking the provisions of section 481. Finding *Hamilton Industries* persuasive, we reject Kohler's contention that the IRS was barred from making the inventory adjustment. Therefore, we reach the merits of the inventory issue.

■ In that regard, our task "is not to determine whether in [our] own opinion [a taxpayer's] method of accounting ... 'clearly reflect[s] income,' but to determine whether there is an adequate basis in law for the Commissioner's conclusion that it did not." *RCA Corp. v. United States,* 664 F.2d 881, 886, 889 (2d Cir.1981). Thus, we must determine whether there was an adequate basis for the IRS's conclusion that Sterling's use of the LIFO accounting method did not clearly reflect income when Sterling treated the Rockwell reduced price inventory as the same "item" type as subsequently manufactured and otherwise identical goods.

The accounting treatment of inventory for tax purposes is governed by 26 U.S.C. §§ 446 and 471 (1994). Sections 446(a) and (b) provide as follows:

(a) **General Rule.**—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) **Exceptions.**—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

26 U.S.C. § 446(a), (b). Section 471(a) provides, in pertinent part:

Whenever ... the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

*Id.* § 471(a). As stated in Treas. Reg. § 1.471–2(b):

[I]nventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation. ...

Finally, use of the LIFO method of inventory accounting "in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income," is specifically sanctioned by 26 U.S.C. § 472 (1994).[5]

To understand whether the IRS had an adequate basis for determining that the use of the same "item" category for Rockwell items and subsequently manufactured goods caused income not to be clearly reflected, it is necessary to have a firm grasp of the

---

**5.** Section 472 provides, in pertinent part:

**§ 472. Last-in, first-out inventories**

(a) **Authorization.**—A taxpayer may use the method provided in subsection (b) ... in inventorying goods specified in an application to use such method ... [as long as] [t]he change to, and the use of, such method [is] in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income.

(b) **Method applicable.**—In inventorying goods specified in the application described in subsection (a), the taxpayer shall:

(1) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof; and second, those acquired in the taxable year;

(2) Inventory them at cost; and

(3) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their costs by the average cost method.

LIFO accounting method. Two common methods of inventory accounting are the LIFO and FIFO (first-in, first-out) methods. The difference between these methods relates to whether, when a taxable entity sells a fungible product pulled from inventory, it is deemed to have sold the last product placed in inventory, or the product that has been in inventory for the longest period of time. Using the LIFO system, the taxpayer's closing inventory is deemed to consist of the earliest acquired goods. Under FIFO, the closing inventory is deemed to consist of the most recently manufactured goods. The LIFO method results in less income than FIFO during times of rising prices because income is computed as the difference between the selling price and the price of the most recently produced, higher priced goods. The IRS permits the use of LIFO because the LIFO accounting system affords relief against profits that merely reflect the bloating of inventory values due to inflation. *See Spang Indus., Inc. v. United States,* 791 F.2d 906, 913 (Fed.Cir.1986) (recognizing that "the LIFO method of determining costs is designed to reflect cost increases that result from inflation").

Kohler, relying on Treas. Reg. § 1.446–1(c)(ii), argues that the IRS cannot reject a taxpayer's method of accounting on the grounds that it fails to clearly reflect income if the method used: (i) accords with generally accepted accounting principles ("GAAP"); (ii) is applied consistently from year to year; and (iii) is specifically authorized by the Code or regulations. Kohler asserts that because each of these prongs is satisfied with respect to Sterling's use of the LIFO method for tax year 1978, the Court of Federal Claims erred in upholding the IRS's adjustment of Kohler's income for tax year 1984. The government responds that Kohler's reliance on Treas. Reg. § 1.446–1(c)(ii) is misplaced because the regulation relates only to the method by which the taxpayer determines the taxable year in which income is accrued.

■ At the outset, we recognize that "[t]he Commissioner's determination with respect to clear reflection of income is entitled to more than the usual presumption of correctness, and the taxpayer bears a heavy burden of overcoming a determination that a method of accounting does not clearly reflect income." *Hamilton Indus.,* 97 T.C. at 128. We conclude that Kohler has failed to meet this burden.

■ First, the government is correct in its assertion that Treas. Reg. § 1.446–1(c)(ii) relates only to the year in which income is accrued. The regulation provides:

The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations.

Treas. Reg. § 1.446–1(c)(ii). That the regulation applies only to timing is evident from the express language of the regulation. *See id.* ("The method used by the taxpayer in determining when income is to be accounted for . . . ."). In addition, in *Hamilton Industries,* the Tax Court stated that "[e]ven if a method of accounting comports with generally accepted accounting principles, consistently applied, where such method does not clearly reflect income, such method will not control for tax purposes." *Hamilton Indus.,* 97 T.C. at 128.

After reviewing the cases cited by Kohler and the government, we conclude that the Court of Federal Claims properly found *Hamilton Industries* persuasive. In both *Hamilton Industries* and the case at bar, "petitioner [sought] to fill its inventory with goods purchased at a steep discount, and then replace them with goods purchased and produced at higher cost." *Id.* at 136–37. The court in *Hamilton Industries* did not rely, as Kohler suggests, on the arbitrary nature of the discount value, but rather on the fact that the LIFO system was not only compensating for inflation but was permitting the taxpayer to postpone gains associated with bargain priced inventory. The court stated that "[i]f factors other than inflation enter into the cost of inventory items, a reliable index cannot be computed." *Id.* The court explained:

[I]f changes in mix of the inventory result in the substitution of more expensive goods for less expensive goods[,] the treatment of those goods as a single item decreases taxable income because the increase in in-

ventory costs is eliminated from the LIFO cost of goods as if such cost increase represents inflation. A narrower definition of an item within a pool will generally lead to a more accurate measure of inflation (i.e., price index) and thereby lead to a clearer reflection of income.

*Id.* at 136. After a thorough analysis, the Tax Court held that "even though the two classes of inventory were physically the same, the great disparity in their cost warrants separating them." *Id.* at 139. For the reasons stated in *Hamilton Industries,* we find "adequate basis in law" for the IRS's conclusion in this case that income was not clearly reflected by the LIFO treatment of Sterling's inventory. *Cf. RCA Corp.,* 664 F.2d at 886, 889. Therefore, we agree with the Court of Federal Claims' holding on the inventory issue.

### CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*

26 U.S.C. § 472(a), (b).