SCHALL, Circuit Judge.
 

 The United States appeals from the judgment of the United States Court of Federal Claims in favor of La Crosse Footwear, Inc. (“La Crosse”) in La Crosse’s tax refund suit.
 
 See LaCrosse Footwear, Inc. v. United States,
 
 1998 WL 258453 (Fed.Cl.1998).
 
 [1]
 
 Following a trial, the court entered judgment in favor of La Crosse in the amount of $1.32 million in tax and assessed interest, plus statutory interest. The court held that La Crosse was entitled to a refund of income taxes paid for tax years 1982-1986 because it determined that the base-year cost of certain inventory acquired by La Crosse, for substantially less than either its fair market value or its book value, should be its fair market value instead of its bargain purchase cost, as asserted by the Internal Revenue Service (“IRS”). This determination had the effect of reducing La Crosse’s tax liability for the years in question. We conclude, however, that the base-year cost established by the Court of Federal Claims would not clearly reflect La Crosse’s income. Accordingly, we reverse and remand.
 

 BACKGROUND
 

 I.
 

 La Crosse Rubber Mills, Inc. (“Rubber Mills”) was a closely-held corporation in the business of manufacturing and selling rubber, canvas, and plastic footwear. In 1982, members of the management and ownership group of Rubber Mills formed La Crosse for the purpose of acquiring the assets of Rubber Mills.
 
 [2]
 
 The purchase agreement was consummated on June 21, 1982, with a retroactive effective date of May 1, 1982. Pursuant to the terms of the purchase agreement, La Crosse acquired all the assets of Rubber Mills, including its inventory, accounts receivable, plant, equipment, and cash. The purchase price was approximately $7.5 million ($4.5 million in cash, $400,000 in acquisitions expenses, and $2.6 million in assumed liabilities). The book value of the assets acquired by La Crosse, however, was approximately $10.6 million ($50,-000 in cash, $4.5 million in accounts receivable, $4.0 million in inventory, $500,000 in prepaid expenses, and $1.6 million in fixed and other assets
 
 (e.g.,
 
 plant, property, and equipment)).
 

 La Crosse and Rubber Mills signed an “allocation agreement” under which La Crosse agreed to use full book value as its tax basis in the cash and accounts receivable. In addition, La Crosse agreed to allocate $494,000 for fixed assets and $1.9
 
 *1374
 
 million for inventory. The following table shows the book value and tax allocation of the assets purchased from Rubber Mills.
 

 [[Image here]]
 

 Thus, for tax purposes, La Crosse acquired inventory with a book value of approximately $4.0 million for about $1.9 million. The fair market value of the inventory was even higher, at $5.8 million.
 

 II.
 

 For tax accounting and book accounting purposes, La Crosse elected to use the dollar-value, double-extension, last-in-first-out (“LIFO”) inventory accounting method. The LIFO accounting method is one of two common methods-the other being the first-in-first-out (“FIFO”) method. The difference between these methods is whether a fungible item pulled from inventory is deemed to have been the last product placed in inventory (LIFO) or the product that has been in inventory for the longest period of time (FIFO).
 
 See Kohler Co. v. United States,
 
 124 F.3d 1451, 1457 (Fed.Cir.1997). “Using the LIFO system, the taxpayer’s closing inventory is deemed to consist of the earliest acquired goods. Under FIFO, the closing inventory is deemed to consist of the most recently [acquired] goods.”
 
 Id.
 
 The advantage of the LIFO method is that it matches current revenues against current costs, and thus removes inflationary increases in inventory costs from taxable income.
 
 See Hamilton Indus., Inc. v. Commissioner,
 
 97 T.C. 120, 130, 1991 WL 138574 (1991).
 

 There are two basic methods for valuing LIFO inventories: the dollar value method and the item-by-item method. Under the dollar value method, inventory is grouped into one or more “pools” composed of “items.”
 
 Id.
 
 at 130-31. The inventory in a pool is accounted for on the basis of the dollar value of all the items in the pool, as opposed to the item-by-item method, in which the inventory is accounted for on the basis of the quantity and cost of individual items. Under the dollar value method, changes in inventory levels of a pool are measured in terms of increases or decreases in the aggregate value of all the items in the pool. This allows similar items to be interchanged without creating a liquidation of inventory. For example, under the dollar value method, if metal widgets are replaced by plastic widgets, the change is accounted for based on the difference in value between the widgets. In contrast, under the item-by-item method, the replacement of metal widgets with plastic widgets is treated as a liquidation of metal widgets, which causes the taxpayer to realize the inflationary gains of liquidation
 
 (i.e.,
 
 the cost of goods sold is based on the pre-inflation price of the metal widgets rather than the post-inflation price of the newly acquired plastic widgets).
 
 See generally
 
 Dollar-Value Method of Pricing LIFO Inventories, 8 Stand. Fed. Tax Rep. (CCH) ¶ 22,240.018 (Feb. 4, 1999).
 

 Generally, the value of an inventory pool is measured in terms of equivalent dollar value-called “base-year dollars” of the inventory in the year the taxpayer first used the dollar-value LIFO method-the “base year.” The value of the inventory in base-year dollars is referred to as the “base-year cost.” The value of the original inventory in the inventory pool is called the base-year cost of the original inventory pool. Each subsequent year, the value of the ending inventory is established based on base-year dollars. In other words, the
 
 *1375
 
 value of the inventory pool at the end of the year is valued in dollars equivalent in value to the dollars used to value the original inventory pool. To determine whether the value of the inventory pool has increased or decreased, the base-year cost of the original inventory pool is compared to the value of the ending inventory pool for the year in question in base-year dollars. For example, assume the dollar-value LIFO method was first adopted in 1997 (the base year) and prices increased by 20 percent between 1997 and 1998. If the inventory pool in question was valued at $1900 in 1997 (the base-year cost of the original inventory pool) and $2400 in 1998, the base-year cost of the 1998 inventory (the value of the inventory at the end of 1998 in base-year dollars) is $2000 ($2400/120%). Thus, the inventory pool increased in value by $100 ($2000 — $1900) in terms of base-year dollars; the remaining increase in inventory value ($400) was due to inflation.
 
 See generally id.
 

 The next step is to add the value of the increased inventory pool to the base-year cost of the original inventory pool in order to establish the ending cost of the inventory pool for tax purposes. The inventory pool increased in value by $100, in terms of base-year dollars, between 1997 and 1998, but in terms of 1998 dollars that $100 was valued at $120 because prices increased by 20 percent between 1997 and 1998. The $120, which is called a layer, is added to the base-year cost of the original inventory pool ($1900) to yield $2020, which is the 1998 ending cost of the inventory pool for tax purposes.
 
 See generally id.
 

 In 1999, to determine whether the value of the inventory pool has increased or decreased between 1998 and 1999, the value of the 1999 ending inventory pool, in terms of base-year dollars, is compared to the value of the 1998 ending inventory pool, in terms of base-year dollars. For example, assume prices increased by 25 percent between 1997 and 1999, and the value of the inventory pool in 1999, in current-year dollars, is $3000. The base-year cost of the 1999 inventory is $2400 (3000/125%). Thus, during 1999, the inventory pool increased in value by $400 in terms of base-year dollars ($2400 — $2000 (the base year cost of the 1998 inventory pool)). The increased value of the inventory pool is then added to the 1998 ending cost of the inventory pool in order to establish the 1999 ending cost of the inventory pool for tax purposes. The inventory pool increased in value by $400 in terms of base-year dollars, but in terms of 1999 dollars that $400 is valued at $500 because prices increased by 25 percent between 1997 and 1999. A $500 layer is added to the 1998 ending cost of the inventory pool ($2020) to yield $2520, which is the 1999 ending cost of the inventory pool for tax purposes.
 
 See generally id.
 

 The ratio between current-year dollars and base-year dollars is called the price index. The double-extension method used by La Crosse is one method to determine price indices.
 
 See id.
 
 However, the details of the double-extension method are not relevant to this opinion, and thus are omitted for brevity.
 

 III.
 

 La Crosse treated the inventory that it acquired from Rubber Mills at a bargain price (the “bargain priced inventory”) in the same manner that it treated inventory that it subsequently acquired at fair market value. In other words, La Crosse put the subsequent inventory into the same pool as the bargain priced inventory. La Crosse used the value allocated to the inventory in the “allocation agreement” ($1.9 million) as the inventory’s base-year cost. As discussed above, under the LIFO accounting method, the value of goods used in manufacturing is assumed to be the value of the last goods purchased; in this case, the inventory purchased at fair market value. Because the bargain priced inventory was in the same pool as the inventory subsequently acquired at fair market value, as long as La Crosse’s inventory did not fall below the levels that existed after the original acquisition of the bargain priced inventory, La Crosse would
 
 *1376
 
 not realize the gains from the bargain priced inventory. This is because under the LIFO accounting method, the most recently acquired goods are deemed to be used first. Thus, as long as La Crosse purchased at least as many goods as it used, from an accounting point of view, the bargain priced inventory would still be in inventory and La Crosse would not be required to realize the additional profit from selling goods manufactured from the discounted inventory.
 
 [3]
 

 IV.
 

 In 1986, the IRS audited La Crosse’s 1983 return. The IRS objected to La Crosse’s having valued the base-year cost of its inventories at the bargain purchase price. It also objected to La Crosse’s method of allocating the bargain priced inventory to pools. As a result of the audit, La Crosse agreed to an adjustment to its tax liability of $686,148, plus interest and penalties, for tax year 1983, and an additional adjustment of $165,233, plus interest and penalties, for tax years 1984 through 1986. La Crosse paid the additional taxes in 1987, and filed an amended return seeking a refund in 1989.
 

 La Crosse waived disallowance of the refund claims on November 27, 1991. The IRS took no action on the claims, and La Crosse timely filed its tax refund suit in the Court of Federal Claims on November 29,1993.
 

 At trial, the government argued,
 
 inter alia,
 
 that La Crosse was required to assign the bargain priced inventory and the subsequently acquired inventory to different pools because of the significant price differential between the goods. The government asserted that La Crosse’s current method of assigning inventory to pools allowed La Crosse to indefinitely defer gains stemming from its bargain purchase of inventory from Rubber Mills.
 
 [4]
 
 The government averred that the LIFO accounting method was intended to compensate for the effects of inflation, not to defer income realized from a below market purchase.
 

 In its post-trial opinion, the Court of Federal Claims rejected the government’s argument on the ground that requiring taxpayers to determine when a price difference between goods is “substantial” enough to warrant assignment to different
 
 *1377
 
 pools would create an unworkable standard. In addition, the court,
 
 sua sponte,
 
 concluded that the base-year cost of the bargain priced inventory should have been the fair market value of the inventory rather than La Crosse’s actual cost. Accordingly, the court held that La Crosse was entitled to recover on its tax refund claim. The court directed the parties to submit a joint status report with respect to the computation of damages in conformity with its opinion.
 

 Before the joint status report was filed, this court decided
 
 Kohler Co. v. United States,
 
 124 F.3d 1451 (Fed.Cir.1997). In that case, we held that inventory acquired at a deep discount should be allocated to a separate pool for dollar-value LIFO accounting purposes-essentially confirming the government’s argument before the Court of Federal Claims in this case.
 
 See id.
 
 at 1458. In light of
 
 Kohler,
 
 the Court of Federal Claims issued a second opinion acquiescing to the government’s argument. However, the court reaffirmed its original holding that the base-year cost of the bargain priced inventory should have been fair market value. Damages were re-computed accordingly, and a judgment was entered for La Crosse in the amount of $1.32 million. This appeal followed.
 

 DISCUSSION
 

 I.
 

 “We review a judgment entered following a trial to determine whether it is incorrect as a matter of law or is premised on clearly erroneous factual determinations.”
 
 Kohler,
 
 124 F.3d at 1453. The issue here, whether the applicable statutes and regulations require the cost of the opening inventory in the base year to be its fair market value, is a question of law, which we review
 
 de novo. See id.
 

 The application of inventory accounting methods is governed by 26 U.S.C. §§ 446 and 471.
 
 [5]
 
 Sections 446(a) and (b) provide:
 

 (a) General Rule
 

 Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
 

 (b) Exceptions
 

 If no method of accounting has been regularly used by the taxpayer, or if the method used does not
 
 dearly reflect income,
 
 the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does
 
 clearly refled income.
 

 26 U.S.C. § 446(a), (b) (emphasis added). Section 471(a) provides, in pertinent part:
 

 Whenever ... the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as
 
 most clearly reflecting the income.
 

 26 U.S.C. § 471(a) (emphasis added). At the same time, 26 U.S.C. § 472 specifically sanctions the use of the LIFO method of inventory accounting “in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may
 
 clearly reflect income.”
 
 26 U.S.C. § 472 (emphasis added).
 

 The governing regulation states, in pertinent part:
 

 Except as otherwise provided ... in § 1.472-8 with respect to the “dollar-value” method, the adoption and use of the LIFO inventory method is subject to the following requirements:
 

 (b) The inventory shall be taken at cost regardless of market value.
 

 26 C.F.R. § 1.472-2 (1983). 26 C.F.R. § 1.472-8(e)(2)(iii) provides, in pertinent part, as follows:
 

 
 *1378
 
 Under the double-extension method a base-year unit cost must be ascertained for each item entering a pool for the first time subsequent to the beginning of the base year. In such a case, the base-year unit cost of the entering item shall be the current-year cost of that item unless the taxpayer is able to reconstruct or otherwise establish a different cost. If the entering item is a product or raw material not in existence on the base date, its costs may be reconstructed, that is, the taxpayer using a reasonable means may determine what the cost of the item would have been had it been in existence in the base year. If the item was in existence on the base date but not stocked by the taxpayer, he may establish, by using available data or records, what the cost of the item would have been to the taxpayer had he stocked the item. If the base-year cost of the entering item is either reconstructed or otherwise
 
 established to the satisfaction of the Commissioner,
 
 such cost may be used as the base-year unit cost in applying the double-extension method.
 

 26 C.F.R. § 1.472-8(e)(2)(iii) (1983) (emphasis added).
 

 The cited statutes and regulations make it clear that the IRS has the discretion to determine whether a particular inventory accounting practice clearly reflects income.
 
 See Thor Power Tool Co. v. Commissioner,
 
 439 U.S. 522, 532, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) (holding that the IRS is vested “with wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income”).
 

 II.
 

 The government acknowledges that section 1.472-8(e)(2)(iii) is applicable to the inventory in question because the inventory items that La Crosse acquired from Rubber Mills entered the La Crosse inventory pool after the beginning of the base year. The government argues, however, that the regulation is framed in terms of cost, and that the base-year cost should be La Crosse’s acquisition cost of the inventory, not the inventory’s fair market value.
 

 La Crosse contends that 26 C.F.R. § 1.472-8(e)(2)(iii) provides that the base-year cost may be “reconstructed” for items entering the pool after the beginning of the base year. Based on the definition that reconstructed cost is “what the cost of the item would have been to the taxpayer,” 26 C.F.R. § 1.472-8(e)(2)(iii) (1993), it argues that the reconstructed cost “cannot be anything other than [fair market value] for the year for which the cost is being reconstructed.” La Crosse also argues that “generally accepted accounting principles” support the use of fair market value as the base-year cost.
 

 Ruling in favor of La Crosse, the Court of Federal Claims held that the reconstructed cost contemplated in 26 C.F.R. § 1.472 — 8(e)(2)(iii) is the historical market value (i.e., fair market value) of the items at issue. The court settled on this definition based upon the regulation’s requirement that reconstructed cost is “what the cost of the item would have been to the taxpayer had he stocked the item.”
 

 We do not agree with the Court of Federal Claims’ construction of 26 C.F.R. § 1.472—8(e)(2)(iii) for two reasons. First, the regulation specifically requires that reconstructed cost be established to the satisfaction of the Commissioner. Second,
 
 Kohler
 
 dictates that the LIFO accounting method cannot be used to postpone the realization of gains associated with bargain priced inventory.
 
 See Kohler,
 
 124 F.3d at 1457 (noting with approval that, in
 
 Hamilton Industries,
 
 the court rejected the LIFO system because it “was not only compensating for inflation but was permitting the taxpayer to postpone gains associated with bargain priced inventory”).
 

 Section 1.472-8(e)(2)(iii) provides that: “If the base-year cost of the entering item is either reconstructed or otherwise established to the satisfaction of the Commissioner, such cost may be used as the base-year unit cost in applying the double-extension method.” The regulation also pro
 
 *1379
 
 vides that “the base-year unit cost of the entering item shall be the current-year cost of that item unless the taxpayer is able to reconstruct or otherwise establish a different cost.” Thus, unless the Commissioner approved, or wrongly withheld approval of, the use of fair market value as the reconstructed cost, La Crosse must use its current-year cost (acquisition cost) as the base-year cost.
 

 As noted above, the Supreme Court has recognized that the Commissioner is given broad discretion to determine whether an inventory accounting method is clearly reflective of income.
 
 See Thor Power Tool,
 
 489 U.S. at 583, 99 S.Ct. 773. As the Court of Federal Claims acknowledged, using the fair market value as the base-year cost in this case would not clearly reflect income.
 
 La Crosse,
 
 slip op. at 16 (“In effect, the bargain goods ... are provided a stepped-up basis such that the benefit of the bargain purchase is never realized as income or taxed.”). On these facts, we cannot say that the Commissioner abused his discretion by finding that La Crosse’s inventory accounting method was not clearly reflective of income. Because it has not established a reconstructed cost to the satisfaction of the Commissioner, La Crosse must use the current-year cost (the acquisition cost) as the base-year cost.
 
 See
 
 26 C.F.R. § 1.472-8(e)(2)(iii) (1983).
 

 La Crosse’s argument that “generally accepted accounting principles” support the use of fair market value as base-year cost is unavailing. The Supreme Court has held that 26 U.S.C. § 471 establishes a two-prong test for the acceptability of an inventory accounting practice. “First, it must conform ‘as nearly as may be’ to the ‘best accounting practice,’ a phrase that is synonymous with ‘generally accepted accounting principles.’ Second, it ‘must clearly reflect income.’ Treas. Reg. § 1.471-2(a)(2), 26 CFR § 1.471-2(a)(2) (1964).”
 
 Thor Power Tool,
 
 439 U.S. at 532, 99 S.Ct. 773. The Court went on to state that the “Code and Regulations ... leave little doubt” that the latter prong of the test is “paramount.”
 
 Id.
 
 at 540, 99 S.Ct. 773. The Court explained:
 

 The primary goal of financial accounting is to provide useful information to management, shareholders, creditors, and others properly interested; the major responsibility of the accountant is to protect these parties from being misled. The primary goal of the income tax system, in contrast, is the equitable collection of revenue; the major responsibility of the Internal Revenue Service is to protect the public fisc.
 

 Id.
 
 at 542, 99 S.Ct. 773. Thus, conformance with “generally accepted accounting principles” is not enough unless the accounting method also clearly reflects income. Because La Crosse’s method would permit it to avoid realizing the gains from its bargain purchase, its method does not clearly reflect income.
 

 In
 
 Kohler,
 
 we held that the LIFO accounting system was intended to permit taxpayers to avoid profits that “merely reflect the bloating of inventory values due to inflation.”
 
 Kohler,
 
 124 F.3d at 1457. We rejected Kohler’s inventory accounting method because it “was not only compensating for inflation but was permitting the taxpayer to postpone gains associated with bargain priced inventory.”
 
 Id.
 
 In general terms, we held that the acquisition of bargain priced inventory is normally a taxable event and that the LIFO accounting system should not be used to avoid gains associated with that event. The Court of Federal Claims followed the letter of
 
 Koh-ler
 
 by requiring La Crosse to place the bargain priced inventory it acquired from Rubber Mills into separate pools. The court undermined the spirit of
 
 Kohler,
 
 however, by establishing a base-year cost that permitted La Crosse to avoid realizing its gain from the acquisition of the bargain priced inventory. We hold that to clearly reflect income, the base-year cost of the bargain priced inventory should have been its acquisition cost.
 

 
 *1380
 
 CONCLUSION
 

 For the foregoing reasons, the judgment of the Court of Federal Claims is reversed. The case is remanded to the court for entry of judgment in favor of the United States on La Crosse’s tax refund claim.
 

 COSTS
 

 Each party shall bear its own costs.
 
 REVERSED and REMANDED.
 

 [1]
 

 . Although the Court of Federal Claims captioned the case "LaCrosse Footwear, Inc.,” our official caption sheet captions the case "La Crosse Footwear, Inc.” We refer to the party as "La Crosse Footwear, Inc.” or “La Crosse” except when citing to the Court of Federal Claims opinion.
 

 [2]
 

 . Appellee International Footwear Corporation is a holding company. La Crosse became a wholly-owned subsidiary of International Footwear Corporation on August 15, 1983. La Crosse filed a separate income tax return for the fiscal year ending April 30, 1983. In the subsequent tax years at issue, International Footwear Corporation and La Crosse filed consolidated returns. For simplicity, the Plaintiffs-Appellees will be jointly referred to as "La Crosse.”
 

 [3]
 

 . For a manufacturer, gross profits equals sales minus the cost of goods sold (''CGS”). For a given period of time, CGS equals the value of the opening inventory at the beginning of the period, plus the cost of inventory acquired during the period, minus the value of the closing inventory at the end of the period.
 
 See Thor Power Tool,
 
 439 U.S. 522, 530 n. 9, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979). If La Crosse’s bargain priced inventory remained in inventory, the bargain purchase would not be reflected in a lower cost of goods sold and therefore would not result in increased profits.
 

 [4]
 

 . As discussed above, if its bargain priced inventory is not depleted, La Crosse does not realize the profits that accrue to it from selling goods manufactured with that inventory. Because La Crosse turns-over its inventory several times during the year, assigning the bargain priced inventory to a separate pool would cause that inventory to be depleted during the year and would cause La Crosse to realize the gains from the bargain purchase.
 

 For example, assume that La Crosse uses 50 units of a widget in its manufacturing business per year. Further assume that the fair market price of the widgets is $5, that La Crosse purchased 10 units of the widget at the bargain price of $1, and that, after the bargain purchase, La Crosse purchased 50 additional units at the fair market price. If the bargain priced widgets are assigned to the same pool as the other widgets, under the LIFO accounting method, the 50 widgets purchased at fair market value are considered depleted
 
 (i.e.,
 
 used first) and the CGS is $250 (Beginning Inventory $10 (10 x $1) + Additions to Inventory $250 (50 x $5) — Ending Inventory $10(10 x $1)). Alternatively, if the bargain priced widgets are assigned to Pool A and the widgets purchased at fair market value are assigned to Pool B, then under the LIFO accounting method, all ten units in Pool A and 40 units from Pool B are depleted. This assignment results in a CGS of $210 (Pool A: CGS = $10 ($10 + 0 — 0), Pool B: CGS = $200 (0 + $250 — $50)). Thus, in the latter assignment, the CGS is lower, which results in higher profits and higher taxable income.
 

 [5]
 

 . All statutory references are to the 1994 version of the United States Code.